This petition for the writ of certiorari is the result of a judgment rendered by the Circuit Court of Montgomery County denying petitioner, the United States of America, the right to recover on behalf of the Veterans Administration certain costs *Page 1135 
incurred by the latter in the treatment of an employee of defendant below, Bear Brothers, Inc.
Frank Watkins, a veteran, was injured in the course of his employment with Bear Brothers, Inc., a company subject to the Alabama Workmen's Compensation Act. Immediately after Watkins' accident, Bear Brothers referred him to a Montgomery physician. Approximately a month later a physician specializing in orthopedic surgery examined Watkins and had him admitted to a private hospital. Various tests were performed on Watkins in order to determine the extent of his injury and upon completion of these tests the orthopedic surgeon and a neurologist (both of whom were provided by Bear Brothers) recommended surgery in the form of a laminectomy. Watkins apparently rejected the recommendation, left the private hospital and entered a Veterans Administration Hospital in Birmingham, Alabama. Subsequently, physicians employed by the Veterans Administration performed the necessary surgery on Watkins. The cost of the treatment provided to Watkins by the V.A. was approximately $5,200. There was no dispute as to the necessity for, or the reasonableness of, these expenses.
Watkins later brought a workmen's compensation suit in which he sought to recover from his employer (Bear Brothers) the costs of the medical treatment he had received in regard to his work-related injury. Since Watkins had assigned his right to recover workmen's compensation benefits from his employer to the Veterans Administration,[1] the United States government intervened to obtain reimbursement for the reasonable value of the medical services which had been furnished to Watkins by the V.A.
A hearing was held in the Circuit Court of Montgomery County. After the presentation of evidence by both parties the trial court entered the following order:
 ". . . [T]he Court is of the opinion and finds that [(1)] the United States of America furnished the Plaintiff said medical, hospital and surgical expenses according to the Federal laws without loss of benefit to the Plaintiff, and that the Defendant is not liable to the United States of America for any part of said expenses; [and (2)] the Court is further of the opinion and finds that the Plaintiff, without permission or other authorization from the Defendant, voluntarily and without cause, left the medical care provided by the Defendant and sought care and treatment within the United States of America Veterans' Administration facilities, while at the same time the same, or substantially the same, care was offered by the Defendant's doctors, which the Plaintiff refused, and the Defendant is not liable for said expenses furnished by the United States of America."
The only questions presented here are: (1) whether there was any evidence adduced at trial which would support the trial court's determination that under a statutory exception to the Alabama Workmen's Compensation Law the employer was not obligated to pay the expenses incurred by its employee during the latter's treatment *Page 1136 
and hospitalization with the Veterans Administration; and (2) whether the Veterans Administration (having become subrogated to the employee's rights by virtue of an assignment) can recover from the employer the cost of medical care furnished by the V.A. hospital.
It is well established that this court's review upon petition for a writ of certiorari in a workmen's compensation case is limited to a determination of whether there is any legal evidence which would support the trial court's finding of fact.Romine v. McDuffie, Ala.Civ.App., 341 So.2d 952 (1977); Youngv. City of Huntsville, Ala.Civ.App., 342 So.2d 918 (1976). Moreover, on appeal this court does not weigh the evidence to determine if it reasonably satisfies the issue in question.Nason v. Jones, 278 Ala. 532, 179 So.2d 281 (1965).
We have examined the record and have found evidence which would support the trial court's determination that Watkins voluntarily and unjustifiably left the medical care of the physicians provided by his employer without the latter's knowledge or permission, and that he subsequently obtained treatment from the V.A.
The pertinent evidence in regard to this matter is as follows. At trial Watkins testified that the neurosurgeon who treated him recommended that Watkins see a physician employed by the Veterans Administration if he was dissatisfied with the nature of the treatments being furnished by the neurosurgeon (and the other doctors which his employer had selected). In addition, Watkins stated that he informed his employer that he was obtaining medical care from the V.A. and that his employer did not disapprove or tell him that it would refuse to pay for such care. However, testimony furnished by the neurosurgeon in an oral deposition would seem to indicate that he did not learn that Watkins was being treated by the V.A. until sometime after Watkins had been furnished medical care by that organization. Nor is there any additional evidence that Watkins gave notice to Bear Brothers or the other physicians provided by that company that he wished to obtain treatment from the V.A. The oral deposition of the neurosurgeon does not support or refute Watkins' insistence that the former had recommended that Watkins obtain alternative opinions or treatment in regard to his condition. There was also testimony by Watkins that upon being informed by the neurosurgeon that surgery was recommended, he (Watkins) was reluctant to accept the surgeon's suggestion that he undergo an operation. Instead, Watkins had his records transferred to the V.A. hospital and placed himself under the care of physicians employed by the Veterans Administration. Watkins was questioned about these matters at trial and the record before us reveals the following exchange:
 "Q. They [the neurosurgeon and the orthopedic surgeon] recommended this laminectomy around January of '74, wasn't that right?
"A. Yes.
 "Q. And then did you then start going to the V.A. after that?
 "A. I had my records transferred — my x-rays that I could collect here in Montgomery at Jackson Hospital. And the ones I couldn't collect from Dr. Bostwick's [neurosurgeon's] office, which was the first x-ray he took of my back, I couldn't get that one. And I still wanted. And I never got it yet.
 "Q. You sent all the records to the V.A. that you could?
"A. Yes, sir.
 "Q. Why did you go to the V.A. and quit going to see Dr. Barnes [orthopedic surgeon] and Dr. Bostwick?
 "A. Well, there was a lot of things to think about, the reason I didn't do it.
"Q. Well, tell me?
 "A. The operation, first, was recommended too fast and did not give me enough time to think about the conditions and risk of damage I would have in it never was explained.
"Q. So you decided you wanted to get —
"A. I decided I wanted another opinion from — *Page 1137 
"Q. From another doctor?
 "A. From another doctor. And I got it, and they gave me time to think about it.
"Q. You are talking about they; the V.A.?
"A. That is right. . . ."
The only other evidence which was relevant to the trial court's inquiry into the question of whether Watkins voluntarily and unjustifiably left the medical care of the physicians provided by his employer without the latter's knowledge or permission was the testimony of a person who was employed by the insurer of Bear Brothers, Inc. This person stated that the insurance file in the case contained no written authorization by Bear Brothers (or the physicians provided by Bear Brothers) which consented to Watkins' treatment at a V.A. facility. Moreover, the insurance company employee testified that his company would normally note in the insurance file any oral directives or authorization to that effect. However, he also said he had no knowledge about whether an oral authorization had been given to Watkins permitting him to obtain medical care from the V.A. Additional testimony by the insurance company employee indicates that the V.A. wrote a letter to Bear Brothers requesting payment for the medical services performed on behalf of Watkins but that neither Bear Brothers nor its insurer responded to this letter or indicated that it would pay the costs incurred by the V.A. in treating Watkins. Finally, a hospital summary sheet from the V.A. facility in Birmingham discloses that Watkins was referred to the V.A. hospital in Birmingham by the V.A. hospital in Montgomery.
We believe that the aforementioned evidence was sufficient to support the trial court's conclusion that Watkins voluntarily and without cause left the medical care provided by his employer without the latter's knowledge or permission. Furthermore, we consider such evidence adequate to meet the "any legal evidence" standard necessary to uphold the trial court's finding of fact upon review by certiorari.
Moreover, the unjustified obtainment by an employee of medical care from sources other than those selected by the employer without the latter's knowledge or consent may, in appropriate instances, excuse the employer from liability for the costs incurred by the employee. Title 26, section 293, Code of Alabama 1940 (Recomp. 1958) (Supp. 1973) (Title 25, chapter 5, section 77, Code of Alabama 1975 indicates significant changes in its statutory predecessor) provides in applicable part:
 "In addition to the compensation herein provided, . . . the employer shall pay the actual cost of reasonably necessary medical and surgical treatment and attention . . . as may be obtained by the injured employee during the first four years of disability. . . . If the employee is dissatisfied with the initial treating physician selected by the employer and if further treatment is required, the employee may so advise the employer and in such event the employee shall be referred to a second physician selected by the employer. In the event surgery is required, if the employee is dissatisfied with the designated physician, he may so advise the employer and in such event the employee shall be referred to a second physician selected by the employer. . . ."
(Emphasis supplied.)
Continuing, the statute states:
 ". . . [I]f the employer furnishes . . . medical and surgical attention and supplies during [the] four-year period he shall not be liable under this section, except for such of said services and supplies as may, in an emergency, be procured by the employee elsewhere . . ." (Emphasis supplied.)
The above quoted provision indicates that with the exception of emergency care, the employer has the right to select the medical or surgical attendant who will treat the employee. Moreover, the statute provides that if the employee is dissatisfied with the physician selected by the employer, he should advise the employer of this fact so that the employer can select another physician. *Page 1138 
Accordingly, under the language of section 293 requiring an employee to advise his employer if he is dissatisfied with the employer's physician and permitting the employer to select the medical or surgical attendant of his choice, the employer is not liable for the costs of medical or surgical treatment obtained by the employee without justification or notice to the employer. 99 C.J.S. Workmen's Compensation § 273; 82 Am.Jur.2dWorkmen's Compensation § 391. 2 Larson's Workmen's Compensation Law, Benefits § 61.12.[2]
In the present case the trial court found that Watkins voluntarily and without cause left the medical care provided by his employer and obtained this care elsewhere without the permission or authorization of his employer. As a consequence of this finding the trial court held that the employer was not liable for the costs incurred as a result of the treatment Watkins received from the V.A. The trial court's conclusions had support in both law and fact and will be upheld by this court.
The second issue before this court for review involves the question of whether the Veterans Administration (having become subrogated to the employee's rights by virtue of an assignment) can recover from the employer the cost of medical care furnished by the V.A. hospital.
The United States government contends that the V.A. is entitled to be reimbursed for the medical services it performed on behalf of Watkins. In support of its position the United States places substantial reliance on two recent cases, TexasEmployers' Insurance Association v. United States, 558 F.2d 766
(5th Cir. 1977) and United States v. Bender Welding MachineCo., 558 F.2d 761 (5th Cir. 1977). Texas Employers Insurance
and Bender Welding Machine held that in situations where the V.A. was not required to furnish free medical care to a veteran because of the veteran's ability to defray the expenses of necessary care by means of state (or federal) compensation coverage, the V.A. was entitled to reimbursement from the compensation carrier for the expense of medical service furnished by the V.A. to the veteran-employee. The fifth circuit court of appeals reasoned that since compensation coverage provided an employee with the ability to defray his hospital expenses, the medical services rendered by the V.A. did not have to be furnished to the veteran free of charge. Consequently, the court concluded that in instances where the services provided by the V.A. were not free, these services were the proper obligation of the compensation carrier to the employee.[3]
We believe these decisions are cogent and well reasoned, particularly in view of the fact that the purpose of the Veterans' Benefits Act was to provide free hospital care for non-service connected injuries solely to those veterans who lack the means to pay the necessary costs of medical care rather than a statutory device by which an employer could escape his duty to compensate an injured employee for the expenses incurred in the treatment of a job-related injury. However, the decisions rendered in Texas Employers' Insurance
and Bender Welding Machine are not applicable to the present situation. *Page 1139 
If money provided as a result of the applicability of workmen's compensation benefits is treated as giving an employee the ability to defray expenses, it necessarily follows that medical services need not have been rendered by the V.A. without charge and therefore it would be entitled to reimbursement from the compensation carrier if the V.A. did indeed furnish medical care to the veteran-employee. But in the present case the compensation carrier's duty to provide workmen's compensation benefits was excused on the grounds that the employee voluntarily and without cause left the medical care provided by the compensation carrier and obtained treatment at a V.A. facility without the consent or authorization of the carrier. Consequently, the employee's right to compensation was denied and he was thereby deprived of the ability to defray the costs of the medical services rendered by the V.A. Thus, the V.A. rendered free medical service because an employee is only required to pay the V.A. to the extent he is entitled to reimbursement by reason of workmen's compensation.[4] And the law is clear in this jurisdiction that the compensation carrier would not be liable for any free services rendered to the employee since the carrier is required to pay for only those services which are not free.[5]
In this instance the employee (Watkins) was entitled to receive treatment at the V.A. hospital for injuries; this treatment was free since he had no other source from which the funds necessary to pay the costs could be derived once the trial court held that he was not entitled to workmen's compensation benefits because he voluntarily left the care of his employer's physician and, without notice to the employer, obtained alternative care. Thus, the V.A. incurred expenses treating an employee whom it was found obligated to treat free of costs. Accordingly, the V.A. must absorb those costs. The trial court's holding that the V.A. was not entitled to reimbursement from the workmen's compensation carrier is therefore affirmed.[6]
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.
[1] 38 C.F.R. § 17.48 (d) (1976) provides in part:
 "(d) Persons hospitalized pursuant to paragraph . . . (d) . . . of § 17.47, who it is believed may be entitled to hospital care or medical or surgical treatment or to reimbursement for all or part of the cost thereof by reason of any one or more of the following:
 "(1) . . . (iii) `Workmen's Compensation' or `employer's liability' statutes, State or Federal; . . . or
 "(2) By reason of statutory or other relationships with third parties, including those liable for damages because of negligence or other legal wrong; will not be furnished hospital care, medical or surgical treatment, without charge therefor to the extent of the amount for which such parties, referred to in paragraph (d)(1) . . . of this section, are, or will become liable. Such patients will be requested to execute an appropriate assignment as prescribed in this paragraph. Patients who, it is believed, may be entitled to care under any one of the plans in paragraph (d)(1) of this section, will be requested to execute VA Form 10-2381, Power of Attorney and Agreement. . . . Notice of this assignment will be mailed promptly to the party or parties believed to be liable. When the amount of charges is ascertained, bill therefor will be mailed to such party or parties."
[2] However, in appropriate instances the employee may recover workmen's compensation benefits from his employer even though the employee has contracted for medical care from a source other than one provided by the employer. Among such instances are: (1) where the employer has neglected or refused to provide the necessary medical care; (2) where the employer has consented to the selection by the employee; (3) where notice of and request for alternative care would be futile; and (4) where other circumstances exist which justify the selection of alternative care by the employee. 99 C.J.S. Workmen's Compensation § 273; 82 Am.Jur.2d Workmen's Compensation § 391.See Industrial Indemnity Co. v. Industrial Acc. Comm'n.,188 Cal.App.2d 656, 10 Cal.Rptr. 566 (1961).
[3] Pursuant to the Veterans' Benefits Act of 1957 the Administrator for the Veterans Administration has promulgated regulations which state that persons admitted to a V.A. hospital on the basis of the Act will not be furnished medical care without charge to the extent they are entitled to reimbursement for medical care by reason of a state or federal workmen's compensation statute. 38 C.F.R. § 17.48 (d) (1976).
[4] Regulation 17 has no provision for any billing of the veteran or for making any demand upon him to pay for the services provided for him or for undertaking in any manner to make collection from him. 38 C.F.R. § 17.48 (d) (1976). UnitedStates v. Bender Welding Machine Co., 558 F.2d 761 (5th Cir. 1977). In brief, Regulation 17 cannot circumvent the absolute right of a veteran to receive free care where no other compensation is available. United States v. St. Paul MercuryIndemnity Co., 238 F.2d 594 (8th Cir. 1956).
[5] Title 26, section 293, Code of Alabama 1940 (Recomp. 1958) (currently found in Title 25, chapter 5, section 77, Code of Alabama 1975), specifically provides that if an employee is entitled by either state or federal law to receive medical services from a source other than the employer without any loss of benefit to the employee, then the employer is not liable for the medical benefits under the workmen's compensation law.Sabino v. Independent Life Accident Insurance Co.,52 Ala. App. 368, 292 So.2d 662 (1974). Moreover, the clear import of section 293 is that an employer shall be liable to the employee for expenses incurred in the treatment of a compensable injury unless a statutory exception such as existed in this case precludes liability on the employer's part.
[6] The United States government also contends that the portions of section 293 relied on by the trial court as a basis for its judgment are invalid because they conflict with the supremacy clause found in Article VI of the United States Constitution. However, we find no conflict between section 293 and federal law as the two are applied in this case.