THOMAS, Judge.
 

 Fort James Holding Company, Inc., d/b/a Georgia Pacific (“GP”) appeals from a judgment determining that Cheryl D. Morgan is permanently and totally disabled as a result of an on-the-job accident that occurred on December 5, 2003.
 

 Morgan was employed by GP, and she worked on the Number 3 Ultra Flow machine at GP’s Pennington, Alabama, plant. Morgan regularly worked double shifts at GP, working 16 hours each day. Sometime in early November 2003, Morgan was lifting crates and felt a pain in her back similar to a pain in her back she had felt in 1999, when she was injured at GP while lifting a roll of wrap. Morgan did not report to GP that she hurt her back moving crates in early November 2003. In 1999, Morgan, on the advice of a friend, had sought chiropractic treatment, which resolved her back pain. Because the 1999 experience had been positive, Morgan again sought chiropractic treatment for the back pain she experienced in November 2003.
 

 Morgan’s first appointment with the chiropractor, Dr. Angela Armstrong, was on November 24, 2003. Morgan reported to Dr. Armstrong that she had hurt her back moving crates. She indicated on an intake form that the pain had lasted two weeks, that it was aggravated by moving or lifting, that the condition was not getting worse, and that the pain was not constant but “comes and goes.” Dr. Armstrong’s records indicate that Morgan further explained in a narrative that her back pain was like her 1999 back pain in that it began as a sharp pain in the left side of her lower back, but that it was different this time because the pain did not radiate into her left leg all the time. According to Dr. Armstrong’s notes, Morgan reported that the pain radiated into her left leg only if she stood for a period. Morgan also told Dr. Armstrong that she was suffering from numbness in the balls of both of her feet; neither Morgan nor Dr. Armstrong related this symptom to Morgan’s back injury because it had begun when Morgan started wearing steel-toed boots at work and only occurred while she was wearing those boots.
 

 Dr. Armstrong performed some neurological tests that, she testified, ruled out the possibility that Morgan had a herniated or bulging disk. Dr. Armstrong also did a physical exam and took X-rays, which led her to diagnose Morgan with a muscle spasm. Based on her diagnosis, Dr. Armstrong performed an adjustment, massage, heat therapy, and an ultrasound on Morgan.
 

 On December 3, 2003, Morgan returned to Dr. Armstrong. Morgan was still suffering back pain, and Dr. Armstrong diagnosed her with continuing muscle spasm. Dr. Armstrong performed the same treatments on Morgan that she had performed on November 24. Morgan likewise returned to Dr. Armstrong on December 5 with the same basic complaints, and Dr. Armstrong performed the same treatments.
 

 
 *460
 
 On December 5, 2003, Morgan reported to work at GP at 3:00 p.m. for her scheduled shift. While she was unjamming the Number 3 Ultra Flow machine, a Plexiglass door fell on Morgan, striking her across the lower back. Another employee, Gladys Vann, came to Morgan’s assistance and lifted the door so that Morgan could get up. Morgan testified that she had “blacked out” for just a few seconds and that, when she came to, she had “a pain going all the way through her body on down into my leg and my feet.” Morgan’s supervisor, Ike Bonner, arrived shortly after the accident, and he escorted Morgan to the first-aid station, where she described the accident and her injury to GP’s nurse, Mattie “Kitty” Fendley. Fendley’s notes reflect that Morgan had a “red spot” on the lower left side of her back. According to the notes Fendley took, Morgan reported that she was unsure whether the pain she felt was a result of the door hitting her or the back strain she was having treated by Dr. Armstrong. Fend-ley testified that Morgan reported that she was not hurting that bad and that she had something at home she would use to treat herself. Fendley said that she reminded Morgan that if her back pain was related to the incident, she would need to see the company doctor.
 

 Morgan next saw Dr. Armstrong on December 8, 2003, when she reported that she was hit by the door at work but that the hit “wasn’t that hard.” Dr. Armstrong’s notes indicate that she noticed a bruise “adjacent to the L3/L4/L5 spinous processes on the left side.” Regarding her back pain, Morgan reported to Dr. Armstrong that her back was “about the same” but that she still suffered from pain on the left side. Dr. Armstrong performed Morgan’s regular treatment on December 8.
 

 Morgan next saw Dr. Armstrong on December 10, 2003. On that date, Morgan reported that although her back was “a little better,” she was having pain down her left side when she stood for 30 minutes or so. Morgan related the pain to her earlier 1999 back pain, noting that, although nearly identical, the pain in 1999 was worse when she was sitting, while the current pain was worse when she was standing. Dr. Armstrong concluded that, because the examination on December 10 revealed that Morgan’s muscles were “so tight” on both sides of her lower back, a treatment known as intersegmental traction would be helpful to Morgan.
 

 Morgan continued treatment with Dr. Armstrong until late December. Although she commented to Dr. Armstrong that her back pain seemed to be improving, Morgan continued to complain of pain radiating into her left hip, leg, and foot. Ultimately, Morgan told Dr. Armstrong that she did not think she was improving and that the pain in her left side was exacerbated by standing for only 10 to 15 minutes at a time.
 

 Because her back pain had not resolved, Morgan sought treatment from the company’s doctor, Dr. Terry French. Dr. French first saw Morgan on January 4, 2004. Dr. French’s notes and deposition testimony reflect that Morgan had reported to him that she had pain in her lower back with radiation into her left leg with prolonged sitting or standing. Dr. French performed an examination of Morgan, which he reported to be “normal from a physical standpoint”; he said his examination revealed that Morgan had full range of motion but had diffuse tenderness of the paraspinal muscles, which was slightly worse on the left side. Dr. French said that the examination also revealed no neurological deficits. He prescribed an anti-inflammatory medication, a non-narcotic pain medication, and some muscle relaxers; he also sent Morgan for physical therapy.
 

 
 *461
 
 When Morgan continued to report to the first-aid station at work complaining of pain, Dr. French ordered that she undergo an MRI to rule out any more serious injury. The results of the MRI revealed that Morgan was suffering from pressure on her L4 nerve root on the left side from a bulging disk; Dr. French said that the MRI findings were compatible with the pain that Morgan described. Morgan reported no improvement in her pain at her January 27, 2004, appointment, and Dr. French gave her a steroid shot, prescribed a steroid dose pack, and continued to prescribe muscle relaxers. Although he indicated that Morgan should return in 10 days, she never returned to his office.
 

 Dr. French received Dr. Armstrong’s office notes from either Morgan, GP, or both. GP requested that Dr. French review the notes and determine whether, in his opinion, Morgan’s disk injury predated the December 5, 2003, accident. He opined in a letter that Morgan’s disk injury was present before the December 5 accident.
 

 In early February 2004, Morgan received a document indicating that her claim seeking workers’ compensation benefits for her back injury, which she claimed was related to her December 5, 2003, accident, had been denied. The document indicates that the claim was denied because “current complaints are not related to our injury of 12-5-03.” The document was signed by Jo Ann Jenkins, an examiner with Sedgwick Claims Management Services, Inc. The document indicated that, in addition to being mailed to the Morgan, copies were sent to Dr. French, GP, and the State of Alabama.
 

 Morgan continued to seek treatment for her back from her personal physician, Dr. Frank Dozier, who referred her to Dr. William S. Fleet, a neurologist. Morgan saw Dr. Fleet for the first time on March 15, 2004. In 2007, Morgan was treated by Dr. Robert White and Dr. Patricia Boltz.
 

 As noted above, the trial court entered a judgment determining that Morgan was permanently and totally disabled as a result of the December 5, 2003, accident. GP appeals, raising several arguments. GP argues that the trial court’s judgment fails to comply with Ala.Code 1975, § 25-5-88; that the trial court erred in determining that Morgan properly notified GP of her injury, which GP contends occurred in November 2003; that Morgan’s action was filed outside the statutory limitations period because her injury occurred in November 2003 and she never filed an action based upon that injury; that Morgan waived her rights to compensation and indemnity benefits because she did not avail herself of the treatment offered by GP; that the trial court erred by admitting the May 2007 deposition testimony given by Dr. Fleet; and that the trial court’s judgment is not supported by substantial evidence.
 

 We will first address GP’s claim that the trial court’s judgment fails to comply with § 25-5-88, which requires a trial court to make findings of fact and conclusions of law in workers’ compensation judgments. Alabama law requires only substantial compliance with § 25-5-88, and meager or omissive findings of facts or conclusions of law do not necessarily require a reversal of a workers’ compensation judgment.
 
 See Ex parte Curry,
 
 607 So.2d 230, 232 (Ala.1992);
 
 Calvert v. Funderburg,
 
 284 Ala. 311, 224 So.2d 664 (1969) (construing the predecessor statute to § 25-5-88). However, a trial court must make findings responsive to the issues presented at trial.
 
 Equipment Sales Corp. v. Gwin,
 
 4 So.3d 1125, 1129-30 (Ala.Civ.App.2008).
 

 GP argues that the trial court’s judgment fails to address the specific
 
 *462
 
 question whether Morgan’s use of unauthorized physicians impacted her right to receive compensation benefits or indemnity benefits. According to GP, the trial court’s failure to order it to pay for Morgan’s past medical treatment might indicate that the trial court determined that Morgan’s decision to seek treatment through unauthorized physicians precluded GP’s liability for the costs of that treatment. However, the trial court’s specific finding that GP ceased providing medical care on February 8, 2004, indicates that Morgan might have been permitted to seek care from a physician of her own choosing.
 
 See Kimberly-Clark Corp. v. Golden,
 
 486 So.2d 435, 437 (Ala.Civ.App.1986) (setting out justifications for failing to seek prior authorization of medical treatment from an employer, including “‘where the employer has neglected or refused to provide the necessary medical care’ ” (quoting
 
 United States v. Bear Bros., Inc.,
 
 355 So.2d 1133, 1138 n. 2 (Ala.Civ.App.1978))). Thus, GP argues, the trial court’s failure to address whether Morgan is due any indemnity benefits violates § 25-5-88. Morgan’s only response is that the trial court’s judgment contains findings of facts and conclusions of law, including a detailed history of Morgan’s medical treatment and comments about the trial court’s observations of Morgan in the courtroom.
 

 “ ‘The purpose of Ala.Code 1975, § 25-5-88, is to “ensure sufficiently detailed findings so that the appellate court can determine whether the judgment is supported by the facts.” ’
 
 Farris v. St. Vincent’s Hosp.,
 
 624 So.2d 183, 185 (Ala.Civ.App.1993) (quoting
 
 Elbert Greeson Hosiery Mills, Inc. v. Ivey,
 
 472 So.2d 1049, 1052 (Ala.Civ.App.1985)).
 
 ‘[T]he trial court has a duty to make a finding on each issue presented and litigated before it. In instances where the trial court fails to make a finding responsive to the issue presented, the case must be reversed.’ Thomas v. Gold Kist, Inc.,
 
 628 So.2d 864, 867 (Ala.Civ.App.1993); see also
 
 Harbin v. United States Steel Corp.,
 
 356 So.2d 179 (Ala.Civ.App.1978); and
 
 Dun & Bradstreet Corp. v. Jones,
 
 678 So.2d 181 (Ala.Civ.App.1996). In
 
 Harbin v. United States Steel Corp.,
 
 this court reversed the trial court’s judgment and remanded the case because the trial court had failed to address or to make findings regarding the issue of notice of injury to the employer, despite the issue being presented and litigated. In
 
 Harbin,
 
 this court stated:
 

 “ ‘In the present case the question of whether Harbin notified his employer of his injury was pleaded, contested and submitted to the trial court for its determination. Despite this fact there was no finding made on this issue in the court’s original judgment. Nonetheless, Harbin maintains that the absence of a finding of notice of injury does not require reversal since a number of Alabama cases have held that when a finding of the trial court is merely meager or omissive, the reviewing court may examine the evidence in order to decide if the trial court’s judgment can be sustained.
 
 E.g., West Point Mfg. Co. v. Bennett,
 
 263 Ala. 571, 83 So.2d 303 (1955);
 
 Alabama Textile Products Corp. v. Grantham,
 
 263 Ala. 179, 82 So.2d 204 (1955). However, such is not the rule when, as here, there was no finding made on the issue in question.’
 

 “356 So.2d at 181-82.”
 

 Equipment Sales Corp.,
 
 4 So.3d at 1129-30 (emphasis added).
 

 Although the trial court’s judgment does contain detailed findings of fact regarding Morgan’s medical treatment and the testimony of the various doctors and witnesses, the judgment fails to address whether GP is required to pay for past medical treatment Morgan obtained from
 
 *463
 
 unauthorized physicians. One could read the judgment as indicating that the trial court intended that GP be responsible for that treatment based on certain findings by the trial court, but the judgment itself contains no reference to GP’s duty to pay for that treatment and also indicates that GP’s satisfaction of the amounts outlined in the judgment satisfies its obligation to Morgan, other than for future medical expenses or other benefits arising under Alabama’s workers’ compensation law. Because Morgan requested that GP be responsible for the medical expenses she had incurred and because GP argued that Morgan chose not to avail herself of medical care provided by GP, the trial court was presented squarely with the issue of which party was responsible for the medical expenses Morgan incurred as a result of the December 5, 2003, accident and her resulting injury. Accordingly, because the judgment fails to contain a finding of fact or a conclusion of law pertaining to that issue, we must reverse the judgment and remand the cause for the trial court to comply with § 25-5-88 and make specific findings of fact and conclusions of law regarding which party is responsible for Morgan’s past medical expenses. Based on our resolution of this issue, we preter-mit discussion of the other issues GP raises in this appeal.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
 

 MOORE, J., recuses himself.