86 So.2d 375

Lena Mae MASSEY

v.

UNITED STATES STEEL CORPORATION,
T. C. I. Division.

6 Div. 786.

Supreme Court of Alabama.

Aug. 18, 1955.

Rehearing Denied April 12, 1956.

Lipscomb, Brobston, Jones & Brobston,
Bessemer, for appellant.

Burr, McKamy, Moore & Tate, Wm. Henry Beatty, Birmingham, for appellee.

**LAWSON, Justice.**

This is a workman's compensation case instituted in the circuit court of Jefferson County, Bessemer Division, by Lena Mae Massey against United States Steel Corporation, T. C. I. Division, to recover compensation for the death of her husband, Felix Monroe Massey.

We granted certiorari on application of the plaintiff below to review the trial court's judgment denying compensation.

Plaintiff's husband, to whom we will sometimes hereafter refer as the employee, died in a hospital in Fairfield on August 13, 1952. Death was "due to a dissecting aortic aneurysm." The words just quoted are from the trial court's finding of facts, which goes into a rather detailed discussion of the medical testimony as it relates to the meaning of the words "dissecting aortic aneurysm." We think it will suffice for present purposes to say that the trial court found that death was caused by the rupturing of a soft pulsating tumor containing blood, which tumor resulted from preternatural dilation of the diseased coating of a large blood vessel.

The rupture occurred on the afternoon of August 11, 1952, just as the employee was completing a shower bath in a bathhouse which the defendant company owned and maintained on its premises and which its employees were not required to use, but were permitted to use if they so desired, without any charge.

At the time of his death Massey was employed as a hoisting engineer, that is, he operated a machine which pulled the workmen from the "ore slope to the limestone slope." His duties did not require strenuous physical labor nor were his working conditions abnormal.

The last shift on which the employee worked was from 7:00 A. M. to 3:00 P. M. on August 11, 1952. At about 3:00 P. M. he went to the "check-house" located near the mouth of the mine, where he checked out for the day. He was entitled to no compensation after he checked out and he was then free to go about his own affairs, having completed his duties for the day.

After checking out Massey "walked at a fast pace or moved at a slow trot" to the

bathhouse located approximately two city blocks from the check-out house. Upon arriving at the bathhouse, the employee proceeded to take a shower bath with unheated water, although heated water was available. As heretofore shown, Massey was in the act of coming out from under the shower when he was stricken and fell to the floor. The use of the unheated water after a rapid walk on a warm day increased the employee's blood pressure and caused the diseased or weakened blood vessel wall to break.

The foregoing is a summary of the finding of facts as made by the trial court.

Having found those facts to exist, the court was confronted with the question as to whether they were sufficient to support the conclusion that the death of plaintiff's husband was caused by an accident arising out of and in the course of his employment. § 253, Title 26, Code 1940.

The court concluded from those facts that the employee's death was caused by an accident which occurred in the course of his employment, but further determined that the accident did not arise out of the employment and proceeded to render judgment in favor of the defendant below.

The appellant, plaintiff below, does not question the finding of facts made by the trial court. She admits that such finding is correct and has not brought to this court the evidence taken on the trial below.

■ It is the appellee's insistence that the sole question presented for our consideration is whether or not the trial court correctly concluded from these facts that the accident which it found caused the death of plaintiff's husband did not arise out of his employment. We cannot agree that our review is so limited. Our review is of the judgment rendered in favor of the defendant, not of the reasons given by the trial court for rendering that judgment. In other words, we are not limited to a consideration of the conclusion reached by the trial court upon which it denied recovery to plaintiff. Before we would be justified in reversing the judg-

ment, we must be satisfied from the facts as found by the trial court that it correctly concluded that the death of plaintiff's husband was caused by an accident which was in the course of his employment and be satisfied further that the trial court incorrectly concluded from the facts as found that the accident did not arise out of the employment.

We will consider first the question as to whether the facts as found by the trial court as to the cause of death are sufficient to support the conclusion that death of the employee was caused "by an accident" within the meaning of our compensation law. § 253, Title 26, Code 1940.

The trial court's conclusion that death was caused "by an accident" was not based on a finding that the rupture was caused by a fall, slip or blow, but was grounded on the finding "that the unheated shower after a rapid walk on a warm day increased his blood pressure and caused the dissecting [rupture] aortic aneurysm."

In § 262, Title 26, Code 1940, it is said:

"The word 'accident' as used in the phrases 'personal injuries due to accident' or 'injuries or death caused by accident' in articles 1 and 2 of this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event, happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body by accidental means."

In Pow v. Southern Const. Co., 235 Ala. 580, 180 So. 288, it was pointed out that an injury to be compensable need not be an external traumatic injury. And in Gadsden Iron Works v. Beasley, 249 Ala. 115, 30 So.2d 10, we upheld an award where the cause of death was a heart attack. In De Arman v. Ingalls Iron Works Co., 258 Ala. 205, 61 So.2d 764, 767, we said: "The test as to whether injury is unexpected and unforeseen so if received on a single occasion occurs 'by accident' is that the sufferer did not intend or ex-

pect that injury would on that particular occasion result from what he was doing."

And in the cases of Davis Lumber Co. v. Self, Ala., 82 So.2d 291,[1] and Alabama Textile Products Corp. v. Grantham, Ala., 82 So.2d 204,[2] this day decided, we upheld awards where the injuries were not caused by a fall, slip or blow.

Other courts have held that death was caused "by an accident" when it was shown to have resulted from the rupturing of an arterial aneurysm due to exertion and strain. Evans v. Cavanagh, 58 Idaho 324, 73 P.2d 83; Southern Shipping Co. v. Lawson, D.C., 5 F.Supp. 321; Larson v. Blackwell Lumber Co., 48 Idaho 136, 279 P. 1087; Kayser v. Eric County Highway Dept., 276 App.Div. 789, 92 N.Y. S.2d 612; Jones v. Town of Hamden, 129 Conn. 532, 29 A.2d 772; Haskell & Barker Car Co. v. Brown, 67 Ind.App. 178, 117 N.E. 555. See E. Baggot Co. v. Industrial Commission, 290 Ill. 530, 125 N.E. 254, 7 A.L.R. 1611; Lumbermen's Mut. Casualty Co. v. Griggs, 190 Ga. 277, 9 S.E.2d 84; Bussey v. Globe Indemnity Co., 81 Ga.App. 401, 59 S.E.2d 34; Fealka v. Federal Mining & Smeltering Co., 53 Idaho 362, 24 P.2d 325.

We hold that the trial court correctly concluded that the death of the employee was caused "by an accident" within the meaning of our compensation law, having found that death was caused by the rupturing of an aortic aneurysm and that the immediate cause of the rupture was the exertion and strain incident to walking rapidly and the cold shower. Of course, the fact that the aorta was in a diseased condition does not preclude compensation. Gadsden Iron Works v. Beasley, supra.

■ We have often found it necessary to construe the words "arising out of and in the course of his employment", § 253, Title 26, Code 1940, but it has been said no all-embracing definition has yet been found. Carraway Methodist Hospital v. Pitts, 256 Ala. 665, 57 So.2d 96. Every case involving these words should be de-

cided upon its own particular facts and circumstances and not by reference to some formula. But it is usually said that the phrase "arise out of" employment refers to employment as the cause and source of the accident. Southern Cotton Oil Co. v. Bruce, 249 Ala. 675, 32 So.2d 666. The rational mind must be able to trace the resulting injury to a proximate cause set in motion by the employment and not by some other agency. Dean v. Stockham Pipe & Fittings Co., 220 Ala. 25, 123 So. 225. We have said that the phrase "in the course of his employment" refers to the time, place and circumstances under which the accident took place. An injury to an employee arises in the course of his employment when it occurs within the period of his employment, at a place where he may reasonably be and while he is reasonably fulfilling the duties of his employment or engaged in doing something incident to it. Mobile Liners v. McConnell, 220 Ala. 562, 126 So. 626; Southern Cotton Oil Co. v. Bruce, supra; Carraway Methodist Hospital, Inc., v. Pitts, supra.

The question before us also involves proper application of subdivision (j) of § 262, Title 26, Code 1940, as amended, which defines the circumstances in general terms when an accident arises out of and in the course of one's employment. See Sloss-Sheffield Steel & Iron Co. v. Thomas, 220 Ala. 686, 127 So. 165. That subdivision purports to exclude from compensation all injuries and death except while employees are "engaged in, on, or about the premises where their services are being performed, or where their service requires their presence as a part of such service at the time of the accident, and during the hours of service as such worker." This clause has received much consideration.

In Jett v. Turner, 215 Ala. 352, 110 So. 702, 703, we said that the part of the subdivision (j) quoted above contains the following three conditions: "(1) One of relation 'while engaged in' the service, while the hazards of the employment are present, risks which the law aims to make in some measure the burden of industry rath-

---

1. 263 Ala. 276.

2. 263 Ala. 179.

er than the burden of the victim of the accident. (2) One of place, viz., 'On or about the premises' where their services are being performed, or where their service requires their presence as a part of such service at the time of the accident.' (3) One of time, viz., 'during the hours of service as such workmen.' "

This court has had occasion to consider the provisions of subdivision (j), supra, with reference to injuries to employees caused by accident occurring on the premises of the employer shortly after the employees' actual service as workmen had been completed for the day and while actually engaged in the act of leaving the premises of the employer en route to their homes.

In House v. Louisville & N. R. Co., 208 Ala. 216, 94 So. 289, we upheld an award made for the death of an employee which resulted from falling over a rail or track situated on the employer's premises. The employee's actual service had been terminated only a few minutes before the fall and at the time of the fall the employee was in the act of leaving the employer's premises by a route or way of departure which the employees were authorized to use in going to and from their homes. In that case, after taking cognizance of the provisions of law now codified as subdivision (j) of § 262, Title 26, Code 1940, and of the phrases "arising out of" and "in the course of employment", we said:

"Definitions or descriptions of these phrases, elsewhere approved, are repeated in Ex parte Majestic Coal Co. [Ala., 93 So. 728] supra. It will now suffice to say, in the light of those authorities, that an employee's injury is within the prescription of these phrases of the Alabama act if, when the injury was received, the employee was either doing the work or performing the service he was engaged to do or perform, or was engaged in an act or service naturally related thereto, such as a reasonable judgment would refer either to the express or the implied elements of the contract of employment, such as a reasonable conception would conclude to be a natural incident of the employee's engagement. Within the purview of such naturally related and incidental acts in the course of the employment is the movement of the employee in entering, at the appropriate time, the employer's premises to discharge his function; his preparation to begin and to terminate his actual service; and to leave the premises at an appropriate time after the completion of his actual service. Gane v. Norton Hill Co., 2 K.B. (1909) 539; Terlecki v. Strauss, 85 N.J. L. 454, 89 A. 1023; 1 Honnold, pp. 358, 367, 368 et seq." 208 Ala. 219, 94 So. 292.

In Overton v. Belcher, 232 Ala. 396, 168 So. 442, we reversed the judgment of the circuit court denying compensation to the widow of an employee where it was made to appear that the employee was killed on the premises of his employer and while leaving the place of employment at the end of his day's service. The employee died as a result of injuries received when he was run over by a truck owned by the employer and which the employee was attempting to board for the purpose of riding to his home in accordance with an established custom.

The cases to which we have just referred are authority for the proposition that plaintiff's right to compensation for the death of her husband is not destroyed merely because his actual services for the day had been completed, or because he was not at the location on the employer's premises where his actual services were performed.

In Hayes v. Alabama By-Products Corp., 242 Ala. 148, 5 So.2d 624, we affirmed a judgment of the trial court denying compensation for death caused by an accident which occurred in a bathhouse, after working hours, and on property owned by the employer but under lease to a third person. The bathhouse had been constructed by the lessee at his own expense and without the knowledge or consent of the employer. The employee was permitted by the lessee to use the bath for the sum of $1 per month. The employer provided no bathing facilities for its employees. We

took note of our holdings in the Jett and Overton Cases, supra, but distinguished them from the case there at hand on the ground that "here the employee was injured when using services not provided free by the employer, but rather provided by a third person at a charge to the employee." That ground of distinction does not exist here for, as shown above, the bathing facilities were furnished by the employer, which permitted the employees the use thereof without compensation. There is an additional distinction between the case at bar and the Hayes Case, supra. Here the facilities were located on the premises where the employee performed his services for the employer while, as shown above in the Hayes Case, supra, the bath was on premises leased by the employer to a third person for the purpose of operating a boarding house. The case of Colorado Industrial Commission v. Rocky Mount Fuel Co., 107 Colo. 226, 110 P.2d 654, like our Hayes Case, involved an accident which occurred while the employee was using a shower for which he had to pay compensation.

Our holdings in the House and Overton Cases, supra, are based on the proposition that an employee, while in the act of leaving his employer's premises, where his service has been performed, at an appropriate time after the completion of his actual service, is engaged in an act naturally related and incidental to the service or work which he was engaged to perform. We think the same rule applies to the facts of the instant case where the employee, although not actually moving off the premises at the time he was stricken, was taking a bath at the time and place and in the manner heretofore related in preparation for his homeward journey after a day's work in a mine.

The case of Carraway Methodist Hospital v. Pitts, supra, is authority for the proposition that the workmen's compensation law may be applicable although the employee was not actually on duty at the time of injury.

In denying compensation on the ground that the accident did not arise out of the employment, the trial court observed:

"In order for an accident such as we have in the case at bar, or a heart attack, or heat exhaustion, to 'arise out of * * * the employment,' it is necessary that it stem from some danger or risk in the employment that is materially greater than the danger or risk to which people commonly in that community are exposed. If such accident is caused by a condition to which people in general are exposed, it does not arise out of the employment. Pullman-Standard Car Mfg. Co. v. Lively, 239 Ala. 684, 196 So. 870. The deceased was not exposed to any danger in his work that was not the common danger of other persons in general. There was no requirement by defendant that he leave the check-house at a rapid pace. In fact, the pace he used in going from the check-house to the bath house was voluntarily set by him, and was not required by his work, and was not in excess of that which workmen in general would use. It was voluntarily on his part that his shower was unheated water, because heated water was available. Moreover, taking a shower in the summertime on a warm day with unheated water is not a danger greater than that to which people in general are subjected. Taking the shower was not required by his employment. It was optional. His work as a hoist engineer did not cause him to become heated more than normal."

We think the heat exhaustion cases should stand in a class by themselves, because their generalized nature makes it difficult factually to attribute the attack to the work or to an act incident thereto.

But in a case such as this, where there is a breakage of a blood vessel resulting from strain or exertion, the question of

compensation or not should be determined much in the same manner as if a leg or arm was broken.

In the House Case, supra, the employee was not engaged in the performance of the actual duties for which he was employed. He elected to pursue a route across his employer's premises which would lead him to a place where he could catch a train operated by his employer. He was not required to follow that route or to ride the train. He fell over a railroad track, broke his leg, and died as a result of that injury. As shown above, we held compensation properly awarded. And in the Overton Case, supra, we held compensable the death of the employee who was killed when "he attempted to board this truck, slipped and was thrown under the wheels, the truck passing over his body." There the employee acted voluntarily in attempting to catch the truck. There was no requirement that he leave the premises on his employer's truck and certainly he was not expected to attempt to board a moving truck.

The questions presented on this review are difficult of decision, but we feel that the facts as found by the trial court lead to the conclusion not only that the employee's death was caused "by an accident," but that the accident arose out of and in the course of the employment. See Taylor v. 110 South Pennsylvania Avenue Corp., 117 N.J.L. 346, 188 A. 689; Terlecki v. Strauss, 85 N.J.L. 454, 89 A. 1023; Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S.W. 152, 13 A.L.R. 524.

The judgment of the circuit court is reversed and the cause is remanded, with directions to the circuit court to fix the compensation and enter judgment for plaintiff.

Reversed and remanded.

SIMPSON, GOODWYN, MERRILL and MAYFIELD, JJ., concur.