82 So.2d 291

**DAVIS LUMBER COMPANY**

v.

**Mable SELF.**

**6 Div. 690.**

Supreme Court of Alabama.

Aug. 18, 1955.

St. John & St. John and Jack C. Riley, Cullman, for appellant.

Julian Bland, Cullman, for appellee.

LAWSON, Justice.

Certiorari was granted on petition of Davis Lumber Company, employer, to review a judgment of the circuit court of Cullman County awarding compensation to the widow and minor children of Early Dolphus Self, deceased.

The trial court found that on January 15, 1953, deceased, while employed by Davis Lumber Company as a laborer, sustained a personal injury caused by an accident which arose out of and in the course of his employment and which injury resulted in his death.

Self began work for Davis Lumber Company several months prior to January 15, 1953, the day on which the plaintiff below claims her husband suffered an injury which she also claims proximately caused his death. Self was a comparatively small man weighing approximately 135 pounds and about five feet six inches tall. His duties, in part, consisted of helping in the stacking of lumber, which had to be lifted and then carried a distance of from ten to thirty feet to the point where it was stacked. Some of the green timber weighed more than 300 pounds. On the afternoon of January 15, 1953, while assisting in the lifting and carrying of a timber, Self complained of severe pain in his back. His complaint at the time was that he had strained his back and had a catch in it. He stopped work. He turned pale and appeared to be in pain, but refused medical assistance at the time. After a short rest he began to work at lighter tasks. When he arrived at his home after work he made complaint of pain in his back. His wife administered to him as best she could. He returned to his place of employment the

next day, but again performed only light work. That was his last day of work.

Prior to January 15, 1953, the employee had been in good health. He had made no complaint of any pain in his back before that date.

Self's home was in Cullman County eight or nine miles from the city of Cullman. On Sunday afternoon, January 18, 1953, he was carried to Cullman to see Dr. L. H. Clemmons, to whom he made complaint of pain in the lower part of his back and to whom he related the events of the afternoon of January 15. On that occasion Dr. Clemmons made only a "cursory examination" and prescribed for the backache." Thereafter, on January 27 and on February 2 Self was carried to the office of Dr. Clemmons, where on both occasions he made complaint of pain in his back. Apparently Dr. Clemmons continued to treat Self as if the pain in his back was caused by a pulled or strained muscle. On February 6, 1953, Self was admitted to the Cullman Hospital on the recommendation of Dr. Clemmons. While in the hospital Dr. Clemmons found that Self had a tender prostate gland, but treated him for a back injury because of the complaint of pain in the back, legs and abdomen and because of other symptoms usually indicating a back injury. However, none of the many X-ray pictures which were made revealed a broken bone or any other defect in the back. Self, while in the hospital, became progressively worse and had what Dr. Clemmons described as "a changing neurological picture." Because of the facts just mentioned, Dr. Clemmons referred Self to Dr. Stanley Graham, a neurosurgeon in Birmingham. On February 12, 1953, Self was carried from the Cullman Hospital to Jefferson Hospital in Birmingham, where he remained until March 1, 1953, under the care of Dr. Graham. On March 1, 1953, Self was removed to his home in Cullman County where he remained until his death on March 14, 1953, during which period of time he was not seen by a physician until approximately one hour before his death.

Dr. Clemmons would not execute the certificate of death but had it sent to Dr. Graham, who did execute it. According to that certificate, the disease or condition which directly led to death was "myelo radiculitis."

Dr. Graham did not testify in this case. Dr. Clemmons was called by the plaintiff. Dr. Stitt, Dr. Dodson and Dr. Barnes, all general practitioners in the city of Cullman, as is Dr. Clemmons, were witnesses for the defendant. Dr. Stitt and Dr. Dodson had examined Self one time while he was in the Cullman Hospital at the request of Dr. Clemmons, but their examinations were not exhaustive. Dr. Barnes never saw Self.

The doctors who testified were each questioned as to the meaning of the words "myelo radiculitis." They used varying language in their answers, but we think the substance of their answers is the same and that a composite answer is to the effect that those words are used to indicate an inflammation of the spinal cord and the posterior nerve roots. See definition of "myeloradiculitis," The American Illustrated Medical Dictionary, by Dorland, 21st Edition.

Two of the doctors, Clemmons and Stitt, were questioned as to whether "myelo radiculitis" is a fatal malady. Dr. Clemmons said he did not know. Dr. Stitt stated that it "possibly could be" but that in all his practice he had never heard of it being fatal. Dr. Barnes and Dr. Dodson were not questioned along that line, although it was brought out that Dr. Dodson had been suffering from that condition for several months at the time of the trial. We observe here that while two of the doctors indicated that they were not aware that "myelo radiculitis" would prove fatal they, along with the other two doctors, recognized that Dr. Graham was an outstanding neurosurgeon and they did not question his diagnosis.

The medical testimony differed as to the cause of "myelo radiculitis." The testimony of the doctors on this point is hereafter summarized.

Dr. Clemmons stated in effect that it could be caused by a sudden jar, strain or "jolt" of the body resulting from the lift-

ing or carrying of a heavy object such as a heavy timber. He also stated that an X-ray would not show "myelo radiculitis."

Dr. Stitt testified that "it is usually caused from some infection in the body and could be caused from a tumor, with an interference of the blood supply, and could be caused by a virus infection in the cord nerve roots itself." He answered in the negative the question "Is it the result of working such as lifting?" He also testified that "myelo radiculitis" could be caused by infection; that a tender prostate indicated infection. He answered "Yes, sir" to the following question: "Is it possible that the infection of a prostate as reflected by tenderness could be transmitted to the nerve roots of the spine and cause inflammation of it." On cross-examination Dr. Stitt stated in effect that an injury to a person suffering with "myelo radiculitis" could "proximately contribute to his death."

Dr. Dodson stated that "myelo radiculitis" is caused by infection and injury; that lifting does not cause it unless the lifting "injured the spinal cord or the spine in the process"; that an injury sufficient to cause death would be reflected by X-ray; that infection from the prostate "could cause it."

Dr. Barnes was not interrogated as to the cause of "myelo radiculitis."

Dr. Stitt, Dr. Dodson and Dr. Barnes, in response to hypothetical questions, gave their opinion that the alleged injury was not the cause of death. They expressed no opinion as to what was the cause of death.

Dr. Clemmons very frankly stated that he had no opinion as to the cause of death. His testimony clearly shows that he was of the opinion that Self sustained a back injury, either to the spinal cord or the nerve roots, but he was unwilling to express the opinion that the injury did or did not cause or contribute to death. He did state, however, that in his opinion the injury which he found from his examination and treatment of Self *could* have produced death. He also expressed the opinion that Self's "prostate trouble" did not cause or proximately contribute to his death.

■ The burden was on the appellee, plaintiff below, to reasonably satisfy the trial court by competent evidence that the death of her husband resulted from a compensable injury. Alabama Pipe Co. v. Wofford, 253 Ala. 610, 46 So.2d 404; Ex parte Alabama Dry Dock & Shipbuilding Co., 213 Ala. 88, 104 So. 251; Ex parte Big Four Coal Mining Co., 213 Ala. 305, 104 So. 764. In other words, the burden was on plaintiff to reasonably satisfy the trial court by competent evidence (1) that her husband sustained a personal injury, (2) which was caused by an accident arising out of and in the course of his employment, and (3) to show by the same character of evidence a causal connection between the injury so received and death. There must be legal evidence of the facts necessary to relief. The conclusion of the trial court cannot be allowed to rest on surmise. Sloss-Sheffield Steel & Iron Co. v. House, 217 Ala. 422, 116 So. 167. But circumstantial evidence is a recognized form of proof in compensation cases as well as in others. Gulf States Creosoting Co. v. Walker, 224 Ala. 104, 139 So. 261.

■ Counsel for the employer concedes the well-established rule to the effect that if there is any reasonable view of the evidence that will support the conclusion reached by the trial court, its finding and judgment will not be disturbed here. Sloss-Sheffield Steel & Iron Co. v. House, supra; Mobile Liners v. McConnell, 220 Ala. 562, 126 So. 626; Birmingham Post Co. v. McGinnis, 256 Ala. 473, 55 So.2d 507. But having made that concession, they then direct our attention to the principle that where there is a total lack of evidence in the trial to support the finding of a material fact, a question of law is presented which this court will review. Then follows the argument that there is a total lack of legal evidence in this case to support the trial court's finding that the death of the employee resulted from a compensable injury.

■ As heretofore indicated, we think the testimony of Dr. Clemmons amply sufficient to support the finding that on the afternoon of January 15, 1953, Self, as a

result of a strain or exertion incident to the lifting and carrying of a heavy timber, sustained an injury to the nerves in or around his spine.

■ But there is no evidence that the injury was caused by a fall, slip or blow or that it resulted from an unusual strain or exertion; hence, the question is presented as to whether the injury was caused "by an accident" within the meaning of our compensation law. A similar question was presented in the case of Alabama Textile Products Corporation v. Grantham, Ala., 82 So.2d 204.[1] A back injury was also involved in that case and we held that the evidence supported a finding that the injury was caused "by an accident" within the meaning of our compensation law, although there was no finding of a fall, slip or blow or that the injury resulted from unusual strain or exertion. We think the holding in that case is applicable to the instant case. We will not repeat here the authorities cited in the Grantham case in support of our holding.

■ The question remains as to whether the plaintiff met the burden which was upon her to show by competent evidence a causal connection between the injury and the death. We think she met that burden.

As heretofore shown, Dr. Stitt, Dr. Dodson and Dr. Barnes stated that in their opinion there was no connection between the alleged injury of January 15, 1953, and Self's death on March 14.

On the other hand, Dr. Clemmons testified in effect that it was his opinion that there was a possible causal relationship between the injury and death and Dr. Dodson testified that the injury could cause the condition shown to have caused death.

■ Testimony as to mere possibilities is generally insufficient to sustain an award under the Workmen's Compensation Law. But here we have a sequence of oc-currences from the time of the injury to the death which we think sufficient to raise a natural inference that the death was caused by the injury. True, there was expert evidence to the contrary, but it was for the trial court to believe it or not. Warlick v. Driscoll, 68 Idaho 552, 200 P.2d 1014; Gudeman Co. v. Industrial Commission, 399 Ill. 279, 77 N.E.2d 807; Woodson v. Kendall Mills, 213 S.C. 395, 49 S.E.2d 597; Josi's Case, 324 Mass. 415, 86 N.E.2d 641. In Walker v. Hogue, 67 Idaho 484, 185 P.2d 708, 711, it is said:

> " 'The modern concept is that it is enough if the preponderance of the probabilities, according to the experience of mankind, points toward a causal relationship. Thus, where death follows soon after an injury to an able bodied man, there arises a presumption or natural inference that the death was caused by the injury, in the absence of believed, contrary testimony. And even though the only doctor who testified stated that there was no causal relation, an award to a claimant may stand, as the doctor may be disbelieved and causal relation inferred from the rest of the evidence.'—Horovitz 'Current Trends in Workmen's Compensation,' Reprinted from the Law Society Journal for August, 1947, Volume 12, No. 7, pages 658, 659 and 660."

We are of the opinion when the evidence is viewed in the light favorable to the widow of the employee, as must be done on this appeal, the facts and circumstances shown by the record are such as to warrant the conclusion reached by the learned trial court.

The judgment appealed from is due to be affirmed. It is so ordered.

Affirmed.

SIMPSON, STAKELY, GOODWYN and MERRILL, JJ., concur.