829 So.2d 158 (2001)
LFI PIERCE, INC., d/b/a Labor Finders
v.
Patricia Ann CARTER, mother and next friend of Nathan Luvell Carter; and Kenya Foster, mother and next friend of Jemisha Foster.
2000274.
Court of Civil Appeals of Alabama.
October 5, 2001.
As Corrected on Denial of Rehearing December 14, 2001.
David M. Wilson and Jud C. Stanford of Wilson & Berryhill, P.C., Birmingham, for appellant.
Frank M. Cauthen, Jr., of McElvy & Ford, P.C., Tuscaloosa, for appellee Kenya Foster, mother and next friend of Jemisha Foster.
Richie Tipton, Tuscaloosa, for appellee Patricia Ann Carter, mother and next friend of Nathan Luvell Carter.
YATES, Presiding Judge.
Patricia Ann Carter, as the mother and next friend of Nathan Luvell Carter, a minor; and Kenya Foster, as the mother and next friend of Jemisha Foster, a minor, *159 sued Treesmith, Inc., and LFI Pierce, Inc., d/b/a Labor Finders, seeking to recover workers' compensation death benefits pursuant to § 25-5-60, Ala.Code 1975, arising from the death of the children's father, Phillip Lee Mahan, Jr. The case proceeded to trial on stipulated facts. On November 8, 2000, the trial court entered an order awarding the children death benefits pursuant to § 25-5-60. Labor Finders appeals.
We initially note that, "absent live testimony, the trial court's findings of fact carry no presumption of correctness and we will review the trial court's factual and legal conclusions de novo." W.D. Williams, Inc. v. Ivey, 777 So.2d 94, 98 (Ala.2000). The facts in this case were stipulated to at trial and the stipulations were supplemented by two deposition transcripts. Because the facts are not in dispute, the only issue for this court to decide is whether the trial court properly applied the law to the facts. Stewart v. Goodyear Tire & Rubber Co., 686 So.2d 1225 (Ala. Civ.App.1996).
Mahan was employed by Labor Finders, a temporary labor provider, which placed him on a job with Treesmith. Pursuant to its contract with Treesmith, Labor Finders was responsible for providing workers' compensation coverage for Mahan. On the day of the accident, Mahan and others were working to remove storm debris from a steep slope on a residential lot on Lake Tuscaloosa. Dennis Robertson, a Treesmith employee, supervised and directed all work on the job site. There were 13 workers on the job site; some of them were regular Treesmith employees, and some, like Mahan, were furnished by Labor Finders.
Mahan and the other employees began removing the debris from the lot at approximately 7:30 a.m. on the date in question. The lot on which Mahan and the others were working contained 160 steps that were built into the slope leading from the house down to the lake. Mahan was required to carry heavy trees and other debris to the top of the slope. The temperature on that date ranged from 98° to 100° F., with a high level of humidity. Because of the extreme and oppressive conditions, the crew was given a 15-minute break every 45 minutes.
Mahan and the crew took a break at approximately 3:00 p.m.; Mahan and the other employees had at least one to two more hours of work remaining at that time. At the beginning of the break, Robertson (Mahan's supervisor) and others walked to the pier at the bottom of the slope and jumped into the lake to cool off. Robertson testified in his deposition that before jumping into the lake he stated that "it would be a pretty good cooling off time." Mahan first climbed the slope for a drink of water from the water cooler located at the top of the hill and then he descended the slope to the pier. Mahan followed the other employees into the lake; he drowned.
Robertson testified that he had jumped into the lake for the purpose of cooling off and not for a recreational swim. Robertson stated that in his judgment, given the heat and humidity and the kind of work he and the others were performing, they were getting into the lake just to cool off.
Matthew Smith, the president of Treesmith, investigated the drowning on behalf of the company. Smith questioned Robertson after the drowning and testified that he was told by Robertson that Robertson had thought going into the water was a good idea because it was hot and the crew was fatigued and wanted to cool off. Smith stated that Robertson did not call it a swim but rather described it as "[jumping] *160 in, [washing] the sweat and sawdust off and [climbing] right back out."
Labor Finders argues on appeal that the trial court erred in awarding workers' compensation benefits to the dependents. In order for Mahan's death to be compensable, it must have been caused by an accident "arising out of" and "in the course of" his employment with Labor Finders. §§ 25-5-31 and 25-5-51, Ala. Code 1975. The phrase "arising out of" requires a causal connection between the injury and the employment. Dunlop Tire & Rubber Co. v. Pettus, 623 So.2d 313 (Ala.Civ.App.1993). The phrase "in the course of" refers to the time, place, and circumstances under which the accident occurred. Id. "Every [workers'] compensation case involving the construction of the words `arising out of' should be decided on its own peculiar facts and not by reference to a formula." Pope v. Golden Rod Broilers, Inc., 539 So.2d 313, 315 (Ala. Civ.App.1989). It is not contested that Mahan's conduct was "in the course of" his employment with Labor Finders; rather, the question is whether the accident causing Mahan's death was one "arising out of" his employment.
This court has stated:
"When an employee deliberately and substantially steps outside of his employment, this conduct constitutes a substantial deviation from his employment. If an employee is injured while substantially deviating from his employment, the employee's injury is not a compensable injury because the injury does not arise out of and in the course of his employment. It is necessary to determine whether the employee's activity so deviated from his business purpose that he went beyond his course of employment by leaving his business purpose to carry out a personal purpose or objective."
Kewish v. Alabama Home Builders Self Insurers Fund, 664 So.2d 917, 922 (Ala. Civ.App.1995) (citations omitted). This court has also stated:
"It is well settled that work-connected activity goes beyond the direct services performed for the employer and includes at least some ministration to the personal comfort and human wants of the employee. Such acts which are necessary to the life, comfort, and convenience of the employee while at work, though strictly personal to himself, and not acts of service are incidental to the service. Therefore, an injury sustained in the performance thereof is deemed to have arisen out of the employment."
Gold Kist, Inc. v. Jones, 537 So.2d 39, 41 (Ala.Civ.App.1988) (citations omitted). However, the method or manner of seeking the personal comfort must not be unreasonably dangerous or unconventional. Id.
Considering the particular facts of this case and keeping in mind the beneficent purpose of the Act, we conclude that Mahan did not substantially deviate from his employment by jumping into the lake to cool off. Mahan simply followed his supervisor and others into the lake for a few minutes in order to escape the oppressive heat and humidity and conditions of his employment, to which he had been exposed for approximately seven and one-half hours. Mahan's entering the lake did have a causal connection with his employment, and it falls within those incidental acts described in Gold Kist, supra. Accordingly, the judgment is due to be affirmed.
AFFIRMED.
CRAWLEY, J., concurs.
*161 MURDOCK, J., concurs specially.
THOMPSON and PITTMAN, JJ., dissent.
MURDOCK, Judge, concurring specially.
As the main opinion notes, for an injury to an employee to be compensable under our workers'-compensation laws, the injury must be caused by "an accident (1) arising out of and (2) in the course of employment. Ala.Code 1975, § 25-5-31." Kewish v. Alabama Home Builders Self Insurers Fund, 664 So.2d 917, 922 (Ala.Civ.App. 1995). In my opinion, the more problematic of these requirements in the present case would be whether Mahan's death arose "in the course of" his employment.
Our Supreme Court long ago recognized that "the phrase `in the course of his employment' refers to the time, place and circumstances under which the accident took place." Massey v. United States Steel Corp., 264 Ala. 227, 230, 86 So.2d 375, 378 (1955). "An injury to an employee arises in the course of his employment when it occurs [ (1) ] within the period of his employment, [ (2) ] at a place where he may reasonably be and [ (3) ] while he is reasonably fulfilling the duties of his employment or engaged in doing something incident to it." Id. at 230, 86 So.2d at 378. "It is well settled that work-connected activity goes beyond the direct services performed for the employer and includes at least some ministration to the personal comfort and human wants of the employee." Gold Kist, Inc. v. Jones, 537 So.2d 39, 41 (Ala.Civ.App.1988) (citing 1A A. Larson, The Law of Workmen's Compensation, § 20.10 (1985)).
For an act that is not in reasonable fulfillment of the duties of employment to be considered "in the course of" employment, it must be reasonably incidental to the duties of employment, themselves. Thus, an injury is compensable under the Act "if, when the injury was received, the employee was either doing the work or performing the service he was engaged to do or perform, or was engaged in an act or service naturally related thereto, such as a reasonable judgment would refer either to the express or the implied elements of the contract of employment, such as a reasonable conception would conclude to be a natural incident of the employee's engagement." Massey, 264 Ala. at 231, 86 So.2d 375. In this regard, this court has stated that "the method or manner of seeking personal comfort may be unreasonably dangerous or unconventional and in that instance may not be considered incidental to the work normally within the course of the employment." Gold Kist, 537 So.2d at 41 (citing 1A A. Larson, The Law of Workmen's Compensation, § 21.10 (1985)). See also 2 Larson's Workers' Compensation Law, §§ 21.01, .05, and .08 (2001) (discussing principles that bear on the determination of whether an act not constituting a direct duty of employment is incidental to the employment).
However, we need not resolve the issue of whether Mahan's drowning arose in the course of his employment because that issue was not argued on appeal. See, e.g., Millar v. Wayne's Pest Control, 804 So.2d 213 (Ala.Civ.App.2001).
Turning then to the issue which we are called upon to resolve in this case, I agree that Mahan's death did "arise out of" his employment. "[I]t is usually said that the phrase `arise out of' employment refers to employment as the cause and source of the accident." Massey, 264 Ala. at 230, 86 So.2d at 378. "The rational mind must be able to trace the resulting injury to a proximate cause set in motion by the employment and not by some other agency." Id. (emphasis added and citations omitted). In Wells v. Morris, 33 Ala.App. 497, 35 So.2d 54 (1948), the Alabama Court of *162 Appeals affirmed a judgment of the trial court awarding workmen's compensation benefits, concluding that the employee's injury had arisen out of his employment and reasoning as follows:
"By reason of his employment [the employee] was exposed to [the] hazard, which was a natural incident of his work at that place and which he would not probably have otherwise encountered. It is reasonably apparent from the entire evidence that the decedent would not have received this injury but for this contract of employment of him by defendant."
33 Ala.App. at 501, 35 So.2d at 58 (internal quotation marks omitted).
Mahan entered the lake, as did several of his coworkers and his job-site supervisor, to obtain relief from the severe conditions of his employment, including physical exertion and the extremely high heat and humidity of his job site on the bank of the lake. Accordingly, I conclude that his entering the lake did have a causal connection with his employment and, therefore, his death did "arise out of" that employment. I therefore concur in the decision to affirm the trial court's judgment.
THOMPSON, Judge, dissenting.
I conclude that Mahan's jumping into the lake was not incidental to his employment, therefore, that his death did not "arise out of" his employment. See § 25-5-31, Ala.Code 1975; Kewish v. Alabama Homebuilders Self Insurers Fund, 664 So.2d 917 (Ala.1995); Gold Kist, Inc. v. Jones, 537 So.2d 39 (Ala.Civ.App.1988)
In Kewish v. Alabama Homebuilders Self Insurers Fund, supra, Kewish, the employee, was inspecting test holes dug near a dam site to be certain the holes had been completely refilled; this inspection was a normal part of his employment duties. In addition to being an employee of the company responsible for digging the test holes, Kewish was also the owner of the property he was inspecting at the time of his injury. After inspecting the test-hole sites, Kewish walked through a wooded area on the property and crossed a dam. As he crossed the dam, Kewish slipped and fell into a dry pond bed. Kewish's injuries left him a quadriplegic. After the accident, Kewish was unable to tell why he was in the area of the dam at the time he was injured. However, the employer presented evidence indicating that Kewish's employment duties did not require him to be in the vicinity of the dam. The trial court determined that Kewish's actions constituted a deviation from the course of his employment, and it denied his request for workers' compensation benefits. This court affirmed, stating that "when [Kewish] crossed the dam, he was not fulfilling the duties of his employment; he was not engaging in something incidental to his employment. There was no business or employment purpose intended." Kewish, 664 So.2d at 923.
In Gold Kist, Inc. v. Jones, supra, the employer, Gold Kist, did not require that its employees take their lunch breaks on its premises, but it was customary for Gold Kist employees to eat their lunches in the company's parking lot. Jones, an employee, was injured while eating lunch in the parking lot. The trial court determined that Jones's injury arose out of and in the course of his employment. In addition to the portion of that case quoted in the main opinion, this court also stated:
"We find that the lunch break, whether compensated or not, is a period of activity instrumental to employment just as would be a coffee break or a visit to the toilet. When taken on the employer's premises in an area provided for that purpose (either expressly or impliedly), it may reasonably be assumed to be of some benefit or advantage to the employer in the operation of its business or the advancement of its interest." *163 Gold Kist, Inc. v. Jones, 537 So.2d at 41 (emphasis added). This court then went on to specify:
"Although not a factor in this case, we do point out, however, that the method or manner of seeking personal comfort may be unreasonably dangerous or unconventional and in that instance may not be considered incidental to the work normally within the course of the employment. 1A A. Larson, The Law of Workmen's Compensation, § 21.10 (1985)."
Id. (Emphasis added.)
The record in this case indicates that the work crew engaged in manual labor and that, because of the heat, the work crew took a 15-minute break every 45 minutes. During those breaks, the crew sat in the shade and had drinks from a water cooler. Thus, the employer had provided a method by which its work crew periodically could "cool off." The trial court specifically found that the 15 minute breaks "facilitated getting the work done" and served a business or employment purpose. In other words, those breaks were incidental to the employees' work duties. See Kewish v. Alabama Homebuilders Self Insurers Fund, supra; Gold Kist, Inc. v. Jones, supra.
During the break at which the accident arose, some of the employees entered the lake to clean up and cool off. Mahan first obtained a drink from the water cooler provided by the employer. Unlike the other employees, Mahan then walked to the pier, boarded a boat, and played with the radio on the boat. When his supervisor gave Mahan a look intended to warn him off the boat, Mahan left the boat. He then jumped into the lake.
I cannot conclude that it might "reasonably be assumed" that Mahan's jumping into the lake to "cool off" provided some benefit or advantage to the employer, especially where the employer had provided alternative and conventional methods of cooling off, and the employee had taken advantage of them. Gold Kist, Inc. v. Jones, 537 So.2d at 41. Rather, I conclude that the facts of this case demonstrate an instance where the employee's actions, and his method of seeking personal comfort, were unconventional, and that his actions should not be considered incidental to his employment. Gold Kist, Inc. v. Jones, supra. Therefore, I conclude that Mahan's jumping into the lake was not an act "arising out of" his employment, see § 25-5-31, and was not incidental to the duties of his employment.
While I am not unsympathetic to the position of Mahan's family, I simply cannot conclude that the facts of this case support a conclusion that his accident is compensable under the Workers' Compensation Act. I would reverse the trial court's judgment. For that reason, I must respectfully dissent.
PITTMAN, J., concurs.