990 So.2d 434 (2008)
GOODYEAR TIRE & RUBBER COMPANY
v.
James MUILENBURG.
2060431.
Court of Civil Appeals of Alabama.
February 29, 2008.
*435 Howard B. Warren of Turnbach, Warren, Roberts & Lloyd, P.C., Gadsden, for appellant.
Donald R. Rhea of Rhea, Boyd, Rhea & Coggin, Gadsden, for appellee.
BRYAN, Judge.
Goodyear Tire & Rubber Company appeals from a judgment awarding workers' compensation benefits to James Muilenburg and assessing a 15% penalty against Goodyear for unpaid compensation. We affirm in part, reverse in part, and remand.
Muilenburg sued Goodyear, seeking to recover workers' compensation benefits for a left-leg injury allegedly caused by a work-related accident. Goodyear filed an answer denying the material allegations of Muilenburg's complaint. Following a trial, the trial court entered a judgment finding that Muilenburg's left-leg injury had been caused by a work-related accident. In its judgment, the trial court found: "The evidence... establishes that [Muilenburg] was performing his job ... when his ankle rolled, snapping ... two bones in his left leg. It is obvious [Muilenburg] was performing his duties at the time of this traumatic injury and the injury arose out of his employment." The trial court's judgment awarded Muilenburg temporary-total-disability benefits for a period following his accident; permanent-partial-disability benefits, pursuant to the schedule established in § 25-5-57(a)(3)a., Ala.Code 1975; and a 15% penalty on accrued temporary-total-disability benefits, pursuant to § 25-5-59(b), Ala.Code 1975.
On appeal, Goodyear argues (1) that the trial court erred in awarding benefits to Muilenburg because, Goodyear says, Muilenburg's employment with Goodyear did not cause his accident; and (2) that the trial court erred in assessing a 15% penalty against Goodyear because, it says, there was a good-faith dispute regarding Goodyear's obligation to compensate Muilenburg.
At the time of his accident, Muilenburg operated a "wigwag," a machine that folds processed sheets of rubber onto a metal pallet or "skid." Muilenburg's work duties included transporting skids on an electric truck to and from the wigwag. When transporting a skid, Muilenburg controlled the electric truck by manually engaging *436 buttons on the truck as he walked beside it. Muilenburg testified at trial that he was transporting an empty skid to the wigwag when he "tripped and fell," fracturing his left tibia and left fibula. Muilenburg testified that he believed that the floor was steel where he fell. Muilenburg further testified that he was "not certain" how the accident happened. Muilenburg attributed his inability to recall how the accident happened to the pain that he had experienced upon falling. The record on appeal indicates that no one observed the accident. Immediately after the accident, Muilenburg was transported to a hospital, where Dr. C. William Hartzog performed surgery on Muilenburg's left tibia. Muilenburg was 39 years old at the time of the accident.
A Goodyear-issued "Associate Report of Incident" stated that
"Mr. Muilenburg stated that he was walking around the [electric] truck back to the [wigwag] when his left ankle rolled over. Mr. Muilenburg stated that he heard a pop and then fell to the floor. He stated there was nothing in the floor and that he did not step over or walk on any skids, he was just walking `normally.'"
The associate report concluded that "the area was clean and free of debris, water and obstructions." However, the associate report seems to indicate that it was filled out more than 10 hours after the accident. That report listed Muilenburg and two coworkers, Stan Pollard and Brian C. Bowen, as "investigation team members." However, Muilenburg testified that he had not been involved in preparing the associate report. Similarly, Pollard testified that he did not sign the associate report and that he did not recall ever having seen it. Bowen, the other Goodyear employee listed as an "investigative team member," did not testify.
Muilenburg's "history and physical," completed at the hospital shortly after his accident, stated that Muilenburg had indicated that he was injured when he "tripped over his foot and twisted his left leg inward." Dr. Hartzog testified that fractures of the type that Muilenburg had incurred are usually associated with a twisting motion of the leg. Dr. Hartzog opined that Muilenburg's fractures could have been caused by tripping or slipping on a surface that is somewhat greasy or uneven due to built-up rubber.
Three days after his accident, Muilenburg talked on the telephone with a representative from the third-party administrator responsible for handling workers' compensation claims submitted by Goodyear employees. A transcript of that conversation indicates that Muilenburg stated: "I [had placed] an empty skid in[to] position [when I] walked around [the empty skid] and my left ankle gave way and buckled underneath me, and I fell to the ground." Muilenburg further stated that he did not remember much after falling because of the pain he had experienced. Muilenburg also stated that he did not know if he had tripped on anything or if the floor was wet when he fell.
When the accident occurred, the treads of Muilenburg's work shoes were caked with built-up rubber. Muilenburg testified that he wore those shoes only at work. According to Muilenburg, rubber accumulates in the shoe treads of Goodyear employees because stray pieces of rubber sometimes gather on the workplace floor. Muilenburg testified that he did not remember any stray pieces of rubber lying on the floor at the time of his accident. The surface of Muilenburg's shoes also contained dried slurry residue. The record indicates that slurry is a very slick liquid used in the manufacturing of rubber products. Both Muilenburg and Pollard *437 testified that slurry will sometimes spill onto the floor in the area where Muilenburg worked. However, Muilenburg stated that he did not remember whether slurry was on the floor of his work area when he fell.
Muilenburg testified that the floor in his work area sometimes contained stray rubber pellets, which he described as being roughly the size of "bubble gum." Muilenburg did not, however, testify that he had tripped or slipped on any pellets. Pollard testified that Muilenburg's accident could have been caused by stepping on a pellet or by tripping on a skid.
Section 25-5-81(e), Ala.Code 1975, provides the standard of review in a workers' compensation case:
"(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
"(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence."
Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In a workers' compensation case, "the appellate court must view the facts in the light most favorable to the findings of the trial court." Ex parte Professional Bus. Owners Ass'n Workers' Comp. Fund, 867 So.2d 1099, 1102 (Ala.2003). "[C]ircumstantial evidence is a recognized form of proof in compensation cases as in others." W.T. Smith Lumber Co. v. Raines, 271 Ala. 671, 673, 127 So.2d 619, 622 (1961).
On appeal, Goodyear first argues that the trial court erred in awarding workers' compensation benefits to Muilenburg because, Goodyear says, Muilenburg's employment with Goodyear did not cause his accident. More specifically, Goodyear argues that Muilenburg's accident did not "arise out of" his employment. An employer must pay compensation for its employee's injury or death "caused by an accident arising out of and in the course of his or her employment." § 25-5-51, Ala. Code 1975. Goodyear concedes that Muilenburg's accident arose "in the course of" his employment. See Massey v. United States Steel Corp., 264 Ala. 227, 230, 86 So.2d 375, 378 (1955) ("An injury to an employee arises in the course of his employment when it occurs within the period of his employment, at a place where he may reasonably be and while he is reasonably fulfilling the duties of his employment or engaged in doing something incident to it."). Goodyear argues, however, that Muilenburg's accident did not "arise out of" his employment.
The Alabama Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975, does not define the phrase "arising out of... employment." Our supreme court has stated:
"The phrase `arising out of ... employment' refers to the employment as being the source and cause of the accident. This Court has held that the rational mind must be able to causally connect the resulting injury to the employment. Massey v. United States Steel Corp., [264 Ala. 227, 86 So.2d 375 (1955)]. The claimant bears the burden of proving that his injury arose out of his employment. Southern Cotton Oil Co. v. Wynn, 266 Ala. 327, 96 So.2d 159 (1957)."
Ex parte Patterson, 561 So.2d 236, 238 (Ala.1990). Moreover, "`[c]ourts must liberally *438 construe the workers' compensation law "to effectuate its beneficent purposes," although such a construction must be one that the language of the statute "fairly and reasonably" supports.'" Ex parte Weaver, 871 So.2d 820, 824 (Ala.2003) (quoting Ex parte Dunlop Tire Corp., 706 So.2d 729, 733 (Ala.1997), quoting in turn Ex parte Beaver Valley Corp., 477 So.2d 408, 411 (Ala.1985)).
In arguing that Muilenburg's employment did not cause his accident, Goodyear relies on this court's decision in Wal-Mart Stores, Inc. v. Morgan, 830 So.2d 741 (Ala. Civ.App.2002). In Wal-Mart, the employee, a cashier, was returning to her cash register when she fell and injured her hip. The employee testified that she "just lost [her] balance" and that she did not know what had caused her to lose her balance and fall. Id. at 742. The employee further testified that the tile floor was a possible cause of her accident because the floor was sometimes "slippery." Id. at 746. Based on that evidence, the trial court concluded that the employee's injury arose out of her employment. Id. at 743.
This court reversed the trial court's judgment, stating:
"The record contained no evidence indicating that the floor was wet or that it posed a risk to [the employee]. [The employee] testified that she did not see any water on the floor and that she simply lost her balance and fell. [The employee] also testified that her workplace `probably' had nothing to do with her accident, and that she did not know what caused her to lose her balance. The trial court found only that [the employee] `lost her balance and fell.' Other than [the employee's] conjecture that she `might' have slipped on the floor, the record does not contain evidence indicating that the floor caused [the employee's] injury....
"... [T]he trial court in this case did not infer that the tile floor caused [the employee's] fall; the trial court only noted [the employee's] testimony that it was `possible that her foot slipped on the tile floor when she turned.'"
830 So.2d at 746.
However, in this case, unlike in Wal-Mart, circumstantial evidence supports the trial court's finding that work conditions caused Muilenburg's accident. Muilenburg worked in a more hazardous environment than the environment the employee in Wal-Mart worked in. When the accident occurred, the treads of Muilenburg's shoes were caked with rubber residue. The surface of Muilenburg's shoes also contained residue from slurry, a slick liquid. There was evidence establishing that slurry, stray pieces of rubber, and small rubber pellets sometimes were present on the floor in Muilenburg's work area. Although Muilenburg testified that he was uncertain how the accident happened, there was evidence indicating that his recollection of the accident was clouded by the pain he had experienced upon falling. Although the associate report indicated that the area where the accident occurred was free of obstructions, that report was filled out more than 10 hours after the accident. Further, Muilenburg and his coworker Pollard denied any involvement in preparing that report. "The trial court, as the finder of facts, is authorized to draw any reasonable inference from the evidence...." Winn-Dixie, Inc., of Montgomery v. Ates, 628 So.2d 791, 796 (Ala. Civ.App.1993). Given the facts of this case, the trial court could have reasonably inferred that Muilenburg's accident arose out of his employment.
In Slimfold Manufacturing Co. v. Martin, 417 So.2d 199 (Ala.Civ.App.1981), an employee suffered an "unexplained" fall. Id. at 200. The employer submitted extensive *439 evidence indicating that the employee's fall was due to fainting caused by cirrhosis of the liver, i.e., an "idiopathic factor."[1] The trial court awarded the employee compensation. Id. However, this court reversed the trial court's judgment, concluding that the employee had failed to establish that his employment had caused his fall. Id. at 202. In this case, unlike in Slimfold, there was no evidence indicating that Muilenburg suffered from an idiopathic factor that may have caused his accident. Instead, there was evidence of potentially hazardous working conditions to which the trial court could have rationally connected Muilenburg's accident. See Ex parte Patterson, 561 So.2d at 238; see also Gold Kist, Inc. v. Oliver, 526 So.2d 588, 589 (Ala.Civ.App.1988) (stating that the trial court could have reasonably inferred that an employee's fall on a concrete floor was caused by her employment when there was evidence indicating that the floor was always wet). Accordingly, the trial court did not err in finding Muilenburg's injury to be compensable.
Goodyear also argues that the trial court erred in awarding Muilenburg a 15% penalty on unpaid compensation, pursuant to § 25-5-59(b), Ala.Code 1975. Section 25-5-59(b) provides, in pertinent part: "If any installment of compensation payable is not paid without good cause within 30 days after it becomes due, there shall be added to the unpaid installment an amount equal to 15 percent thereof, which shall be paid at the same time as, but in addition to, the installment." "`[G]ood cause exists when there is a good faith dispute as to the employer's liability to its employee."' Ex parte Crean, 782 So.2d 298, 302 (Ala.2000) (quoting Stevison v. Qualified Pers., Inc., 571 So.2d 1178, 1179 (Ala.Civ.App.1990)) (emphasis omitted).
As noted earlier, in order for Muilenburg to receive compensation, his accident must have "aris[en] out of and in the course of his ... employment." § 25-5-51, Ala.Code 1975. Although it is undisputed that Muilenburg's accident arose in the course of his employment, there was evidence indicating that Muilenburg's accident may not have arisen out of his employment. Accordingly, we conclude that a good-faith dispute existed regarding Goodyear's liability to Muilenburg. See Crown Textile Co. v. Dial, 507 So.2d 522, 524 (Ala.Civ.App.1987) (stating that there was a good-faith dispute regarding the employer's liability to the employee when there was evidence indicating that the employee's accident might have been caused by a condition not arising out of and in the course of his employment). Therefore, the trial court erred in awarding the 15% penalty.
We reverse the judgment of the trial court insofar as it awarded a 15% penalty on unpaid compensation, and we remand the case. In all other respects, we affirm the judgment.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN and THOMAS, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.
MOORE, J., concurs in the result, with writing.
*440 MOORE, Judge, concurring in the result.
Based on our supreme court's holding in Ex parte Byrom, 895 So.2d 942 (Ala.2004), I am constrained to concur in the main opinion's conclusion that the employee presented substantial evidence indicating that his fall arose out of his employment. In Byrom, our supreme court adopted dicta in Ex parte Trinity Industries, Inc., 680 So.2d 262, 266 n. 3 (Ala.1996), when it held that:
"`An employee claiming to have been injured by a sudden and traumatic external event (an "accident" in the colloquial sense, e.g., being struck by a falling hammer on a construction site or slipping off a ladder) need only produce substantial evidence tending to show that the alleged "accident" occurred and tending to establish "medical causation," by demonstrating that the "accident" was a contributing cause of the complained-of injuries and complications.'"
895 So.2d at 947. The court then held that in cases in which an employee claims that he or she has suffered injuries due to an "accident" as defined in Ala.Code 1975, § 25-5-1(7) ("an unexpected or unforeseen event, happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body ... by accidental means"), the Trinity test "does not require proof beyond the fact of the accident itself that the accident arose out of the employee's employment...." Byrom, 895 So.2d at 947.[2]
In this case, as in Byrom, the employee is claiming that he was injured in an "accident." The record contains various versions of how this "accident" happened, but it is undisputed that while working the employee unexpectedly fell, immediately and severely injuring his left leg. Having proven that he had sustained an "accident" while working, the employee, according to Byrom, did not need to prove any additional facts in order to satisfy the "arising-out-of-the-employment" requirement.
I fully recognize that Byrom did not involve an injury caused by a fall. However, the holding of Byrom is phrased so broadly that I can conclude only that the supreme court intended that it would apply to all "accidental" injuries. I am also fully aware that a line of decisions from this court that were issued before Byrom rejected a legal test similar to the one adopted in Byrom when determining whether an injury suffered as the result of a fall is compensable. See Casteel ex rel. Johnson v. Wal-Mart Stores, Inc., 860 So.2d 348 (Ala.Civ.App.2003); Pittsburg & Midway Coal Mining Co. v. Rubley, 882 So.2d 335 (Ala.Civ.App.2002) (accord); Wal-Mart Stores, Inc. v. Morgan, 830 So.2d 741 (Ala.Civ.App.2002); and Slimfold Mfg. Co. v. Martin, 417 So.2d 199 (Ala.Civ.App.1981), writ quashed, Ex parte Martin, 417 So.2d 203 (Ala.1982) (declining to use "but-for" test to determine compensability of fall at work). Although I agree totally with the reasoning in those cases, and although I disagree totally with the analysis used in Byrom, unless and until our supreme court overrules it, this court must follow Byrom. See Ala.Code 1975, § 12-3-16.
Nevertheless, I agree that the employer, relying on our prior caselaw, could have reasonably concluded that the injury resulting *441 from the employee's fall was not compensable. Therefore, I concur in the main opinion's decision to reverse that portion of the trial court's judgment awarding the employee the additional 15% penalty provided for in Ala.Code 1975, § 25-5-59.
NOTES
[1] As our supreme court has stated:

"We use the word `idiopathic' as it is used by Professor Larson, to mean `peculiar to the individual' and not `arising from an unknown cause.' Idiopathic refers to an employee's preexisting physical weakness or disease. 1 Larson, Workmen's Compensation Law § 12.00."
Ex parte Patterson, 561 So.2d at 238 n. 2.
[2] Although the Byrom court subsequently analyzed the case under the increased-risk test, the opinion is clear that its discussion of the increased-risk test was unnecessary to its core holding that the employee had proven that his accident "arose out of the employment" by proving merely that he had been struck by lightning while talking on the telephone at work.