RUSSELL, Judge.
Linda Marie Allred filed suit seeking to recover workers’ compensation benefits for an injury allegedly arising out of her employment with General Electric Company (GE). Allred claimed that while working on a GE assembly line, she sustained an injury to her arm that resulted in a permanent partial disability to her body as a whole and affected her ability to return to her trade.
Following an ore tenus proceeding, the trial court found that Allred had been injured in a work-related accident resulting in a permanent loss of 40% of her earning capacity. Benefits were awarded accordingly. GE appeals. We affirm.
GE raises several issues on appeal. It first contends that Allred presented no evidence to support the trial court’s finding that she was injured in a work-related “accident.” It also contends that Allred failed to show that her present physical impairment was caused by the alleged accident. Finally, it contends that Allred presented no legal evidence of any loss of earning capacity.
We note at the outset that appellate review in workers’ compensation cases is a two-step process. This court will first look to see if there is any legal evidence to support the findings of the trial court. If such evidence is found, this court will then determine whether any reasonable view of that evidence supports the trial court’s judgment. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991).
The record reveals that Allred began working at GE’s plant in Decatur, Alabama, in May 1985. On September 4, 1985, the date of the alleged accident, Allred was working on an assembly line installing rubber gaskets on refrigerator doors. The job involves placing gaskets around refrigerator doors and using a hand-held tool to seal the gaskets in place. Allred had been performing this task on the “door line” for less than one week. (Her previous position at GE involved attaching plastic dishes to the refrigerator doors.) At trial Allred testified that, on the date in question, she was installing a gasket when she experienced a sudden, severe pain in her right arm. Almost immediately, Allred stated, she noticed a “goose-egg” bruise on the back of her upper arm. Allred sought medical treatment when the pain in her arm failed to subside. Although she continued to work for GE in a different assembly line job for the next several months, Allred claimed that she experienced debilitating pain during this period. Following hospitalization for an unrelated illness in February 1986, Allred did not return to work for GE. At trial Allred testified that she still had considerable pain in her arm.
GE first contends that there was no evidence before the trial court that Allred was injured in a work-related “accident” as defined by the workers’ compensation statute. Specifically, GE maintains that all of the evidence suggested that the only injury to Allred was soreness arising over time from repetitive twisting motions of the arm and hand. Such gradually developing symptoms, GE says, do not amount to a compensable injury resulting from an “accident,” defined by § 25-5-1(8), Ala.Code 1975, as “an unexpected or unforeseen event, happening suddenly and violently.” Consequently, GE asserts, Allred is not entitled to recover workers’ compensation.
However, we find ample evidence in the record to support the trial court’s determination that Allred was injured in a work-related accident as defined by the statute. While GE places great import in Allred’s statement that the repetitive motions involved in installing gaskets could cause soreness in her hands, Allred’s other testimony indicated that she sustained an injury as a sudden and violent event:
“[A]ll at once, something happened to my arm. Something went through me like *47 lightning, and I screamed and just fell down in the floor.”
A coworker with Allred on the door line provided supporting testimony that she heard Allred “holler out” as though in pain and that she saw Allred behave as though she had been hurt. We conclude that GE’s arguments as to this issue are without merit.
Related to GE’s first contention is its assertion that Allred failed to establish a medical link between the pain she presently feels in her arm and the subject accident. GE alleges that any physical impairment Allred now has could not have resulted from a sudden event on September 4, 1985, but instead arose gradually. GE places great emphasis on the opinions of two treating physicians who, after tests revealing no nerve damage in Allred’s arm, diagnosed Allred’s ailment as tendonitis of the elbow, commonly called “tennis elbow.” One of the physicians, Dr. David Khoo, an orthopedic surgeon who treated Allred in September 1986, testified by deposition that tendonitis is “less likely” to develop from a single traumatic event than from prolonged, repetitive twisting of the arm. The deposition testimony of Dr. Lynn Boyer, a neurologist to whom Dr. Khoo referred Allred, was generally consistent with Dr. Khoo’s opinions regarding tendonitis. Dr. Khoo found no reason to place work restrictions on Allred, while Dr. Boyer recommended only that Allred refrain from twisting movements of her arm for several months.
However, we find that even the affirmative responses by Drs. Khoo and Boyer to the question of whether Allred’s condition developed gradually carried with them the inference that her condition could have resulted from the accident in question: each doctor described the gradual development of tendonitis in terms of likelihood, not certainty. Dr. Boyer, in fact, stated that while most cases of tendonitis do develop from repetitive movements over time, some may result from “acute injuries which set up a chronic type inflammation.” A third treating physician, Dr. Phillip A. Maddox, an orthopedic surgeon who examined Allred on three occasions following a referral from Dr. Boyer, offered by deposition a diagnosis of Allred’s ailment that differed from those of the other medical experts. Dr. Maddox believed that Allred’s symptoms were compatible with “reflex sympathetic dystrophy” (RSD), a nerve pain syndrome. According to Dr. Maddox, RSD is just as likely to develop from a single trauma to an extremity, like an arm or leg, as from prolonged stressful motion.
GE also maintains that because none of the doctors who treated Allred related the goose-egg bruise on her arm to her subsequent impairment, Allred failed to link her accident to any lost earning ability. However, a review of the record shows that Allred does not claim that her pain is localized in the area of the bruise. Rather, she complained of diffuse soreness from her forearm to her shoulder.
GE has suggested that Allred’s present pain may have been caused by a pre-existing condition. While there is evidence that Allred had a prior condition involving neck and shoulder pain, there was no evidence that this condition affected her ability to perform her work for GE, nor was there medical testimony linking the condition to her present pain.
Our supreme court has held that the test for medical causation “must be determined on a case-by-case basis” and that “the trial court is authorized to draw any reasonable inference from the evidence.” Ex parte Price, 555 So.2d 1060, 1062 (Ala.1989). Medical causation depends upon the totality of the circumstances. To establish medical causation, the employee must show that the exertion or strain or the exposure to conditions was, in fact, a contributing cause of the injury. Id. We conclude that Allred presented evidence establishing a medical link between the subject accident and her present pain (and her loss in earning capacity). Therefore, GE’s arguments as to this issue are without merit.
GE’s final contention is that there is no legal evidence to support the trial court’s finding of 40% lost earning capaci *48 ty. GE points out that the vocational expert who testified that Allred had experienced a 50 to 55% loss of earning capacity based his opinion, at least partly, on facts not in evidence.
The law is that the determination of the proper percentage of disability or loss of earning capacity rests with the trial court, which is in the best position to observe the demeanor of the employee and other witnesses present in court. Dodge v. Lee Apparel Co., 567 So.2d 339 (Ala.Civ.App.1990). The trial court is not bound by expert medical testimony but is free to consider all of the evidence, including its own observations, and to interpret it to its own best judgment. Genpak Corp. v. Gibson, 534 So.2d 312 (Ala.Civ.App.1988).
There was evidence presented concerning Allred’s age, educational background, employment history, and continued complaints of pain. Also numerous medical reports and depositions were before the trial court. Because the trial court was, in this instance, the finder of fact, we presume that it considered such evidence as was before it. Accordingly, GE’s argument as to this final issue is without merit.
We pretermit discussion of the issue of damages raised by Allred in her brief. When a plaintiff does not raise by cross-appeal a deficiency in the amount of her judgment, a reviewing court cannot sustain the plaintiffs attempt to increase the amount of her judgment. See Dickerson v. Stewart, 473 So.2d 1078 (Ala.Civ.App.1985).
In our careful review of the entire record, we find ample evidence supporting the trial court’s findings, including the finding of 40% loss of earning capacity. A reasonable view of the evidence supports the trial court’s judgment. Accordingly, the judgment of the trial court is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.