MOORE, Judge.
After inpatient hospital services had been provided to an injured employee of Steward Machine Company, Inc. (“Steward”), between April 4 and April 16, 2006, at the University of Alabama Hospital in Birmingham, the Board of Trustees of the University of Alabama, for its division University of Alabama Hospital (hereinafter referred to as “UAB Hospital”), tendered a bill to Steward for $130,284.09.[1] Steward submitted the bill to an entity referred to as Avizent, Steward’s third-party workers’ compensation administrator, for payment.[2] After screening the bill, Avizent notified UAB Hospital that it disputed some of the charges, and it tendered payment of only $93,766.54. Avizent later sent a letter to UAB Hospital explaining that it had disallowed charges it concluded had been “unbundled or included in another service.”
After efforts to obtain further payment had failed, UAB Hospital submitted the fee dispute to the Alabama Department of Industrial Relations (“ADIR”),[3] which advised Avizent that it considered the disputed charges to be payable. After Avizent refused to pay the disputed charges, UAB Hospital filed a civil action in the Jefferson Circuit Court (“the trial court”) seeking a declaration of its right to full payment.[4] After a bench trial at which ore tenus evidence was presented, the trial court *69 entered a judgment in favor of UAB Hospital on October 22, 2008, in the amount of $37,845.69.[5] Steward appeals from that judgment.

Issues on Appeal

In its 12-page judgment, the trial court found that Avizent had disallowed certain charges for only 1 reason — “unbundling.” The trial court stated:
“ ‘Unbundling’ is a term applied to errors in medical billing where the payment is based on the performance of procedures for which a price is set in advance. Unbundling occurs when a provider seeks to bill for the separate components of a procedure rather than accept the agreed rate set for the overall procedure.”
The trial court concluded that UAB Hospital could not have “unbundled” its charges because UAB Hospital had not previously agreed to any specific global charge for the services it had provided and it did not itemize separate charges exceeding any previously agreed upon global charge. Rather, the trial court found, UAB Hospital had merely itemized its fees for each service it had provided in accordance with its internal “Chargemaster.”[6] Therefore, the trial court reasoned, Avizent had improperly disallowed certain charges for “unbundling,” a billing practice that did not even apply. The trial court determined that UAB Hospital’s billing complied with its “Negotiated Participating Agreement Between Department of Industrial Relations and University of Alabama at Birmingham Hospital” (“the Participating Agreement”), the relevant language of which will be set out in detail infra, and with the terms of the Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala. Code 1975.
On appeal, Steward argues that the trial court erroneously interpreted the Participating Agreement so that, in Steward’s words, “a self-insured employer is prohibited from performing bill screening for identification of issues such as unbundling of charges.” For the following reasons, we respectfully disagree with Steward’s argument and affirm the judgment of the trial court.

Discussion

In 1992, the Alabama Legislature enacted sweeping changes to the Alabama Workers’ Compensation Act. Among the-stated goals of the new Act was to sustain “a fair and affordable workers’ compensation system” and to provide “quality medical services to employees” “at a reasonable and fair cost to employers.” Ala. Acts 1992, Act No. 92-537, § 1. To accomplish those goals, the legislature incorporated into the Act, among other things, the concept of managed care and a system by which health-care providers are to be reimbursed according to “prevailing” rates. See Ala.Code 1975, § 25-5-1(15) (defining the term “prevailing” as “[t]he most commonly occurring reimbursements for health services, other than those provided by federal and state programs for the elderly (Medicare) and economically disadvantaged (Medicaid)”).
For hospitals, the prevailing rate of reimbursement or payment is established by the method set forth in Ala.Code 1975, § 25-5-77. That Code section provides *70 that, for “participating hospitals,”[7] “the prevailing rate shall be negotiated” by ADIR and the participating hospital “based on [the hospital’s] treatment of comparable type cases” for the preceding year. Ala.Code 1975, § 25-5-77(a). “By definition, the prevailing rate of payment or reimbursement is self-defining and self-setting.” Ala.Code 1975, § 25-5-293(f). In other words, the legislature intended that each participating hospital would establish through negotiations with ADIR its own individualized prevailing rate of reimbursement; those negotiations were to be based on each hospital’s own internal data regarding the fees it had charged during the preceding year for comparable medical treatment provided to the public.
In accordance with § 25-5-77, UAJB Hospital entered into the applicable Participating Agreement with ADIR on February 1, 2006. The Participating Agreement stated, in general, that UAB Hospital would bill for services provided in 2006 “[t]he usual, customary and reasonable charges of [UAB Hospital] for inpatient or outpatient services in effect on the 1st day of January, 2006.” More specifically, the Participating Agreement provided:
“It is hereby agreed to by the parties that [UAB Hospital] shall accept as full reimbursement for all medically necessary and authorized Hospital inpatient services in authorized workers’ compensation cases a maximum amount not to exceed the inpatient per diem prevailing rate of reimbursement for the following types of cases: ... All Other Cases, Except Transplants, shall be a prospective payment of $3,600 for day one (1) and day two (2), and a prospective payment not to exceed $3,200 for day three (3) and all following inpatient days. [UAB Hospital] agrees to bill its billed charges for medically necessary authorized inpatient services, but agrees to accept as maximum reimbursement for inpatient days the lesser of total charges or the heretofore agreed upon inpatient per diem prevailing rate of reimbursement. If the total per diem prevailing rate of reimbursement is less than 63 percent (%) of the total allowed charges, then the payment shall be 63 percent (%) of total allowed charges.”
(Underlining in original.) The Participating Agreement further provided that
“[i]t is expressly understood that the self-insured employer and insurance carrier may perform ... bill screening for the determination of allowed charges for inpatient and/or outpatient services rendered in an accepted workers’ compensation claim pursuant to Code of Alabama, 1975, § 25-5-293(g). Utilization review and bill screening are defined in Code of Alabama, 1975, § 25-5-1 and Department of Industrial Relations Administrative Code Rule 480-5-5-.02.”
Our supreme court has stated:
“General contract law requires a court to enforce an unambiguous, lawful contract, as it is written. A court may not make a new contract for the parties or rewrite their contract under the guise of construing it....
“Parties to a contract are bound by pertinent references therein to outside facts and documents. ‘Other writings, or matters contained therein, which are referred to in a written contract may be regarded as incorporated by the reference as a part of the contract and[,] therefore, may properly be considered in *71 the construction of the contract.’ 17A Am.Jur.2d Contracts § 400 (1991)....
“When interpreting a contract, a court should give the terms of the agreement their clear and plain meaning and should presume that the parties intended what the terms of the agreement clearly state. Words used in a contract will be given their ordinary, plain, or natural meaning where nothing appears to show they were used in a different sense or that they have a technical meaning.”
Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 35-36 (Ala.1998) (some citations omitted).
Relying on the foregoing principles of contract construction, we conclude that UAB Hospital agreed with ADIR in the Participating Agreement to accept as payment the lesser of its billed charges or the amount calculated using the applicable per diem rate. If the per diem rate became applicable, the amount calculated using that per diem rate was to be the maximum amount payable to UAB Hospital unless, under the per diem rate method, UAB Hospital would receive less than 63% of the total “allowed charges.” In that event, the Participating Agreement authorized UAB Hospital to receive payment of 63% of its total “allowed charges.” The parties refer to this last clause as a “stop-loss provision,” which a UAB Hospital witness testified was included in the Participating Agreement to ensure that, in catastrophic cases, UAB Hospital would receive payment of at least a majority of its total fees.
The Participating Agreement did not define “allowed charges,” but it indicated that “allowed charges” were to be determined by “bill screening” as defined in the Alabama Workers’ Compensation Act and the relevant ADIR regulations. Section 25-5-1(20), Ala.Code 1975, and Rule 480-5-5-.02(13), Ala. Admin. Code (ADIR), define “bill screening” as:
“[t]he evaluation and adjudication of provider bills for appropriateness of reimbursement relative to medical necessity and prevailing rates of reimbursement, duplicate charges, unbundling of charges, relativeness of services to injury or illness, necessity of assistant surgeons, adjudication of multiple procedures, number of modalities, global procedures, and any other prevailing adjudication issues that may apply.”
By incorporating by reference the foregoing terms, the parties to the Participating Agreement intended that “allowed charges” would be those charges properly billed by UAB Hospital as established by an appropriate bill screening. Excessive charges due to “unbundling,” as succinctly and correctly defined by the trial court above, would not be included in “allowed charges.” Therefore, we conclude that Steward was within its rights to screen the UAB Hospital bill for “unbundling” of charges.
With that said, we conclude that the burden was on Steward, as the party seeking to avoid payment, to prove at trial that UAB Hospital had “unbundled” its fees so as to charge more than the prevailing rate of reimbursement.[8] Steward attempted to satisfy that burden through the testimony of two witnesses, a former Avizent bill-screening supervisor, and Dr. David Perl-man, an expert witness on bill screening, *72 both of whom testified that UAB Hospital’s bill had itemized charges that should have already been included in a global charge. However, the trial court rejected their testimony, finding that, in fact, no preset global charges existed from which UAB Hospital could have unbundled its fees.
We review pure factual findings in workers’ compensation cases under the substantial-evidence rule.[9] See Ala.Code 1975, § 25-5-81(e)(2). After a thorough review of the testimony of UAB Hospital’s witnesses, we find the trial court had ample evidence before it to support its factual conclusion that UAB Hospital did not un-bundle its charges. Therefore, we conclude that the trial court did not commit reversible error in concluding that Steward improperly disallowed charges for “un-bundling.” In reaching our holding, we reject Steward’s contention that the trial court prohibited it from bill screening for unbundling. Rather, reading the trial court’s judgment as a whole, the trial court simply concluded that no unbundling could have possibly occurred based on the manner in which UAB Hospital billed its charges.
For the foregoing reasons, we agree with Steward that the Workers’ Compensation Act and the Participating Agreement authorize bill screenings of UAB Hospital’s bill for a determination of allowed charges. However, such a bill screening must be appropriate in light of the reimbursement methodology made applicable by the Act to participating hospitals such as UAB Hospital. The bill screening conducted in this case was not appropriately conducted, and, as a result, Steward improperly reduced its payment to UAB Hospital. We, therefore, affirm the judgment of the trial court on the grounds stated in this opinion.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.

. UAB Hospital issued a statement of "total charges” amounting to $246,779.04; however, UAB Hospital discounted the bill pursuant to its workers’ compensation payment agreement with the Alabama Department of Industrial Relations, which will be detailed infra, and a Preferred Provider Organization agreement with Steward’s third-party administrator.

. At the time, Attenta, Inc., was acting as Steward's third-party administrator, but At-tenta has since merged with another company, and the entity acting as Steward's third-party workers' compensation administrator has been "rebranded” as Avizent.

. Pursuant to Ala.Code 1975, § 25-5-77(h), a billing dispute between a provider and an employer or insurance carrier must, as an initial matter, be submitted to ADIR. See also University of South Alabama v. P.J. Lumber Co., 990 So.2d 369 (Ala.Civ.App.2007).

. UAB Hospital also sought imposition of the 10% penalty for late payment found in Ala. Code 1975, § 25-5-77(h). The trial court denied that claim.

. UAB Hospital initially claimed that Avizent had underpaid it by $36,517.55, but it subsequently reduced that amount to $36,450.08. At trial, UAB Hospital proved a slightly different amount — $37,845.69—as the underpayment.

. A "Chargemaster” is a list of fees a hospital maintains that sets out the cost of each service the hospital provides. According to UAB Hospital witnesses, every bill issued by UAB Hospital is calculated based on the Charge-master in place on the date of the service.

. See Ala.Code 1975, § 25-5-1(16) (defining "participating hospitals” as "[t]hose hospitals that have a negotiated rate of reimbursement or payment with the Department of Industrial Relations”).

. The trial court noted that Steward had attempted to prove not only that UAB Hospital was guilty of unbundling, but also that UAB Hospital had charged duplicate fees. The trial court basically concluded that Steward was estopped from asserting any grounds for denying payment other than those presented to UAB Hospital at the time of and preceding the ADIR review. Steward does not appeal that aspect of the trial court’s judgment, so we express no opinion as to its correctness.

. Although the complaint is styled as presenting an action under the Declaratory Judgment Act, Ala.Code 1975, § 6-6-220 et seq., the action actually arose under Ala.Code 1975, § 25-5-77(i)(4) (authorizing a party to a medical dispute that remains unresolved after a review of medical services by ADIR to petition the court for relief).