MOORE, Judge,
concurring in the rationale in part and concurring in the result.
On original submission, I believed that the fact that the record omits a transcript of the trial proceedings occurring on December 13, 2012, precluded our review of the issues raised by Winn-Dixie Montgomery, LLC (“the employer”). Upon further consideration, I am no longer completely convinced of my original conclusion, because I believe some of the issues are renewable.
Originally, the Aabama Workmen’s Compensation Act (“the original Act”) allowed only for certiorari review. See Aa. Acts 1919, Act. No. 45, § 21. Certiorari review allowed only for review of legal errors apparent on the face of the record made by the trial court. See Moses v. Pitney Bowes, Inc., 368 So.2d 545, 546 (Aa.1979) (Jones, J., concurring specially). To facilitate certiorari review, the original Act required the trial court to make a written determination containing findings of fact and conclusions of law. See Greek v. Sloss-Sheffield Steel & Iron Co., 207 Aa. 219, 220, 92 So. 458, 459 (1922). On certiorari review, the appellate court could merely review the judgment to ascertain the facts as found by the trial court and the manner in which the trial court applied the law to those facts. Id. An appellate court could accept transcripts of the evidence, but only for the purpose of deciding whether any evidence supported the findings of fact of the trial court, itself a question of law. 207 Aa. at 221, 92 So. at 460.
Today, the Aabama Workers’ Compensation Act (“the Act”), Aa.Code 1975, *1032 § 25-5-1 et seq., provides a right of appeal of a final workers’ compensation judgment. See Ala.Code 1975, § 25-5-81. Those appeals are governed by the Alabama Rules of Appellate Procedure. See Committee Comment to Amendment to Rule 3(d)(1), Ala. R.App. P., Effective September 1, 2000. Rule 10(b) of the Alabama Rules of Appellate Procedure gives the parties to a workers’ compensation case the right to designate as part of the record on appeal a transcript of the evidence. However, the Act still requires circuit courts to enter written determinations containing findings of fact and conclusions of law. See Ala. Code 1975, § 25-5-88. Accordingly, appellate courts still rely on the judgment of the trial court as the primary record on appeal, using the transcript mainly to determine whether substantial evidence supports the findings of fact in the judgment. See 2 Terry A. Moore, Alabama Workers’ Compensation § 26:24 (1st ed.1998).
Under current law, when a party fails to order the transcript, or to substitute a statement of the evidence under Rule 10(d), Ala. R.App. P., this court must presume that the evidence is sufficient to sustain the findings of fact made by the trial court. See Tinney & Assocs., Inc. v. Parham, 588 So.2d 490, 491 (Ala.Civ.App. 1991). The only issue remaining would be, as under certiorari review, whether the trial court correctly applied the law to the facts as found. See Pow v. Southern Constr. Co., 285 Ala. 580, 583, 180 So. 288, 290 (1938).
In this case, the Jefferson Circuit Court (“the trial court”) conducted a hearing to determine whether Richard Purser (“the employee”) had sustained an injury to his left knee caused by an accident arising out of and in the course of his employment with the employer and whether the employer was liable for certain medical benefits and temporary-total-disability benefits for that injury. See Ex parte Publix Super Markets, Inc., 963 So.2d 654 (Ala.Civ. App.2007). Following that hearing, the trial court entered a judgment containing findings of fact and conclusions of law. The employer transmitted the clerk’s record to this court, which contains the judgment; thus, this court has a limited .record to review on appeal.
In its findings of facts, the trial court sets out that only one witness testified at the hearing — the employee. Summarizing the testimony of the employee, the trial court states that the employee began working for the employer in 2007 or 2008 as a stocker, but was soon transferred to working as a “bagger,” which job is described in an exhibit that is also part of the appellate record. The employee had no physical limitations in regard to his left leg and could fully perform the duties of his job. According to the judgment, the employee testified that, on April 6, 2012, he was at work when his manager requested that the employee assist a coworker with assembling a barbecue grill for display. The two employees sat down in an aisle assembling the grill. After finishing assembling the leg portion of the grill, and in the act of standing up, the employee heard his left leg or knee pop and felt sudden and immediate pain. Over the next several days, his left-knee condition worsened, and, on April 10, 2012, he informed his manager that he needed to see a doctor. The manager agreed but told the employee to use his own health insurance because he did not believe that workers’ compensation would cover the claim.
The trial court found that the employee visited Brookwood Hospital that day, reporting his symptoms and how they began. The employer reported the claim to its workers’ compensation insurance carrier, who directed the employee to see a doctor at St. Vincent’s Occupational Health, who, *1033 in turn, referred the employee to Dr. Keith Weaver, an orthopedic surgeon. Dr. Weaver ordered X-rays of the employee’s knee and determined that his problem was not work related but, rather, caused by preexisting arthritis resulting from trauma from a motor-vehicle accident. On April 30, 2012, Dr. Weaver advised the employee that he would need arthroscopic knee surgery to remove loose particles in the knee but that the surgery should not be covered by workers’ compensation. According to the trial court, the employee had had a motor-vehicle accident in 1988, but he did not injure his knee in that accident; moreover, the trial court did not receive, and Dr. Weaver had not reviewed, any evidence of a previous injury to the employee’s left knee to substantiate Dr. Weaver’s conclusion. The employer’s workers’ compensation insurance carrier denied the employee’s claim on April 30, 2012.
Following the denial of the claim, the employee sought the care of Dr. Perry Savage, who performed arthroscopic surgery on the employee’s left knee on May 15, 2012. The employee was off work from April 30, 2012, to July 19, 2012, after which he returned to work on a reduced schedule. According to the judgment, the employee testified to continuing pain, disruption of sleep, and a tendency of his left knee to give out.
Presuming, as we must, that the missing transcript contains testimony fully supporting the foregoing findings of fact, this court must determine whether the trial court correctly applied the law to those facts. Pow, supra. This court reviews questions of law de novo, without a presumption of correctness. See Ala.Code 1975, § 25-5-81(e)(l).
The preliminary question for our review is whether the employer proved legal causation. For an injury to be compensable, it must be caused by an accident arising out of and in the course of the employment. See Ala.Code 1975, § 25-5-51. The phrase “arising out of’ refers to a causal connection between the injury and the employment. Ex parte Patton, 77 So.3d 591, 593 (Ala.2011). It is not enough that an accidental injury occur in the course of the employment; rather, the employment must be the source and cause of the accident. Slimfold Mfg. Co. v. Martin, 417 So.2d 199, 202 (Ala.Civ.App.1981), writ quashed, 417 So.2d 203 (Ala.1982). To prove legal causation, the employee must prove more than that the injury would not have happened “but for” the employment. Ex parte Patton, 77 So.3d at 595. In other words, the mere fact that the employment placed the employee at the time and place where the injury occurred does not mean that the employment legally caused the accident. See id. “ ‘The rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment, and not by some other agency.’ ” Garrett v. Gadsden Cooperage Co., 209 Ala. 223, 225, 96 So. 188, 190 (1923) (quoting In re Madden, 222 Mass. 487, 495, 111 N.E. 379, 383 (1916)). An employee must prove that the performance of the employment duties exposed him or her to a danger or risk of injury materially in excess of that to which people are normally exposed in merely living. Ex parte Trinity Indus., Inc., 680 So.2d 262, 267 (Ala.1996).
In this case, the trial court found that the employee injured his knee when, while rising from the floor where his job duties required him to be, the employee’s knee “popped.” Thus, the duties of the job, and not some other factor, “set in motion” the proximate cause of the injury. The employer notes that, in the act of standing up, the employee was not lifting, pushing, or pulling anything and, further, that he did not slip, fall, or strike anything and noth *1034 ing struck him. The employer maintains that, in their everyday lives, people commonly stand up from a seated position, so, it asserts, the employment did not increase the employee’s risk of injury. However, the trial court found that the employee was not merely standing up from a chair or a seated position, but was rising up from the floor, which places extra stress on the knees. Even so, an employee “does not have to show any ‘unusual strain or overexertion’ in order to [establish legal causation].” Ex parte Trinity Indus., 680 So.2d at 267 (quoting Southern. Cotton Oil Co. v. Wynn, 266 Ala. 327, 338, 96 So.2d 159, 163-64 (1957)). An injury can be compensable even if the employment conditions do not exert some external force on the employee. Id. In numerous cases, our supreme court has decided that an employee is entitled to compensation when he or she receives an injury while performing routine physical tasks in the course of the employment on the theory that the exertion that causes an injury constitutes an accident arising out of the employment. See, e.g., Massey v. U.S. Steel Corp., 264 Ala. 227, 86 So.2d 375 (1955); Davis Lumber Co. v. Self, 263 Ala. 276, 82 So.2d 291 (1955); Dorsey Trailers, Inc. v. Weaver, 263 Ala. 229, 82 So.2d 261 (1955); and Alabama Textile Prods. Corp. v. Grantham, 263 Ala. 179, 184, 82 So.2d 204, 208 (1955) (“There was no finding by the trial court that the injury was caused by a blow, slip, fall or that it resulted from any unusual strain or exertion. But such findings are not necessary to support the conclusion that an injury of the kind which this plaintiff sustained was caused ‘by an accident’ within the meaning of our workmen’s compensation law.”). Based on those cases, this court has held that, when an employee aggravates a preexisting arthritic condition through physical exertion required by the job, the injury is compen-sable as an accident arising out of the employment even though the injury results from completely internal forces acting on the body of the employee. See, e.g., Hellums v. Hager, 360 So.2d 721 (Ala.Civ.App. 1978); and Martin Indus., Inc. v. Dement, 435 So.2d 85 (Ala.Civ.App.1983). Hence, if the stress from rising from the floor caused the employee to aggravate a preexisting arthritic condition in his left knee, that aggravation would be compensable as the result of an accident arising out of the employment.
On that point, the employer argues that the employee failed to prove medical causation because, it says, the only evidence supporting the theory that the employee aggravated his left-knee condition consists solely of the testimony of the employee, which, it asserts, is not alone sufficient to prove medical causation under Ex parte Southern Energy Homes, Inc., 873 So.2d 1116 (Ala.2003). Assuming that that case remains good law, see SouthernCare, Inc. v. Cowart, 146 So.3d 1051, 1060 (Ala.Civ. App.2013) (Moore, J., concurring in part and concurring in the result in part), Ex parte Southern Energy Homes does not stand for the broad proposition that an employee’s subjective testimony will never be sufficient to prove medical .causation. Rather, our supreme court seemed to hold in that case that an employee’s testimony alone will not be sufficient if all the other evidence in the case casts serious doubt upon the employee’s version of events and the employee’s testimony is not corroborated by the circumstances following an alleged accident. See Bruno v. Harbert Int’l, Inc., 593 So.2d 357, 360-61 (La.1992) (collecting Louisiana cases applying similar rationale).
In this case, unlike in Ex parte Southern Energy Homes, according to the findings of the trial court, the employee immediately notified the employer of his accident and consistently reported to his treating physi- *1035 clans from the outset that the accident had caused an injury to his left knee. Moreover, the circumstances showed that, before his injury, the employee was able to work normally without any symptoms or limitations associated with arthritis in his left knee but that, immediately following the accident, he experienced pain and other symptoms in his left knee that have persisted in some degree ever since. See Waters Bros. Contractors, Inc. v. Wimberley, 20 So.Sd 125, 1S4 (Ala.Civ.App.2009) (holding that trial court can infer medical causation from such evidence). Based on the lay and' circumstantial evidence, the trial court could have reasonably determined that the employment accident caused the employee to aggravate his preexisting arthritic condition in his knee. The fact that the employee did not present an expert medical opinion to bolster his case does not mean that the employee failed to rebut the opinion of Dr. Weaver that the knee injury resulted purely from preexisting arthritis without any employment contribution. See Ex parte Price, 555 So.2d 1060 (Ala.1989); Hokes Bluff Welding & Fabrication v. Cox, 33 So.Sd 592, 595 (Ala.Civ.App.2008) (“[A] trial court may make a finding of medical causation -without the benefit of any direct expert medical testimony, so long as the other evidence is sufficient to sustain its finding.”); Wimberley, 20 So.3d at 133 (“Although Dr. Meyer was the only expert witness to testify regarding medical causation, the trial court was not bound to accept his testimony.”); General Elec. Co. v. Allred, 599 So.2d 45 (Ala.Civ.App.1992) (trial court awarded benefits although expert testimony stated that nonoccupational factors more than likely caused injury); Daniels Constr. Co. v. Phillips, 241 Ala. 537, 3 So.2d 304 (1941) (hearing loss was attributed to work-related accident although family doctor denied causal connection); 1 Terry A. Moore, Alabama Workers’ Compensation § 7:13 (2d ed. 2013) (“As long as sufficient evidence exists to support the trial court’s conclusion, the appellate courts will uphold a finding contrary to a medical opinion. Accordingly, in appropriate cases, expert opinion may be overcome by lay and circumstantial evidence or the trial court’s observations and assessment of the claimant’s credibility.” (footnotes citing multiple cases omitted)).
The employer next argues that the trial court erred in awarding the employee medical benefits. The employer first maintains that the medical records, including those relating to the medical charges, were not admissible because, it says, they amount to hearsay and were not properly authenticated in accordance with Ala.Code 1975, § 25 — 5—81(f)(4). Before the trial date, the employer filed two motions in limine raising the foregoing objections; however, the record contains no order indicating that the trial court took any pretrial action on those motions. Therefore, in order to preserve its objections, the employer had to renew the motions during the trial. See Owens-Coming Fiberglass Corp. v. James, 646 So.2d 669, 673 (Ala. 1994) (explaining the necessity of renewing during trial a motion in limine that has either not been ruled on or has been denied, unless the trial court has expressly stated that no renewal of the motion in limine is required). Because we have no transcript of the trial, we do not have any record that the employer renewed its objections or that the trial court made an adverse ruling against the employer from which an appeal would lie. See Williams v. Seamon, 532 So.2d 1028, 1029 (Ala.Civ. App.1988) (“In the absence of an adverse ruling by the trial court, evidentiary issues will not be considered upon appeal.”).
The employer secondly argues that the employee did not prove that the medical treatment for which he sought payment *1036 was reasonably necessary for his work-related left-knee injury. See Ala.Code 1975, § 25-5-77(a) (“[T]he employer ... shall pay an amount ... of reasonably necessary medical and surgical treatment and attention ... as the result of an accident arising out of and in the course of the employment, as may be obtained by the injured employee.... ”). The employee introduced medical bills from Brookwood Medical Center, Dr. Perry Savage, St. Vincent’s East Hospital, and Anesthesia Group East, P.C. The Brookwood bill indicates a date of service of April 10, 2012. The medical records show that, on that date, the employee received treatment for his left-knee injury. Dr. Savage’s bills arise from his treatment of the employee’s left-knee injury from May 8, 2012, through September 19, 2012, during which period he performed arthroscopic surgery. The surgery took place on May 15, 2012, at St. Vincent’s East Hospital, and an anesthesiologist from Anesthesia Group East, P.C., attended that surgery. The bills from those providers reflect charges arising from the surgery. In its findings of fact, the trial court specifically found that the arthroscopic surgery the employee underwent was reasonably necessary for the work-related injury. Because reasonable necessity and relatedness may be proven by circumstantial evidence, see 2 Terry A. Moore, Alabama Workers’ Compensation § 17:5 (2d ed.2013), I believe that the medical records themselves sufficiently prove that the bills arose from reasonably necessary medical treatment, especially considering, as the trial court did, that Dr. Weaver recommended arthroscopic surgery to repair the employee’s left-knee condition. However, even if the records do not amount to substantial evidence, due to the absence of the trial transcript this court must presume that the trial court received sufficient testimony from the employee to support its findings. See Parham, supra.
The employer thirdly maintains that, because it did not authorize the treatment provided, it bears no liability for the charges. Generally speaking, an employer must pre-authorize nonemergency medical treatment in order for that treatment to be covered at the employer’s expense. See United States v. Bear Bros., Inc., 355 So.2d 1133, 1137 (Ala.Civ.App.1978). However, when an employer refuses to provide care or when a request for care would be futile, the employee may obtain medical treatment for the work-related injury at the expense of the employer without its authorization. See, e.g., Lipscomb v. City of Gadsden, 794 So.2d 395, 397 (Ala.Civ.App.2000). The trial court found that the employee originally had visited the employer’s authorized treating providers but that the employer’s workers’ compensation insurance carrier denied the employee’s claim on April 30, 2012, based on Dr. Weaver’s opinion that the employee’s knee problem was not work related. It is clear that the employer would no longer provide authorized treatment after that date, and it would have been futile for the employee to request it. Hence, as the trial court concluded, the lack of authorization did not relieve the employer of liability for the charges. The employer maintains that the employee had to first seek a panel of four physicians before seeking his own treatment; however, besides generally citing Ala.Code 1975, § 25-5-77, the employer has not cited any legal authority to support that position, and, thus, we may not consider that argument. See Rule 28(a)(10), Ala. R.App. P.; Maxim Healthcare Servs., Inc. v. Freeman, 93 So.3d 974, 982 (Ala.Civ.App.2012).
As its last point on this issue, the employer argues that the employee failed to prove that the amount of the bills fell within the limitations established in the Act. The employer contends that the em *1037 ployee had the burden of proving that the charges were reasonable in amount and that they did not “exceed the prevailing rate or maximum schedule of fees.” § 25-5-77(a). The first part of the argument fails because the 1992 amendments to the Act eliminated the reasonableness standard. See G.A. West & Co. v. Johnston, 92 So.3d 74, 89 (Ala.Civ.App.2012). As for the second part of the argument, the employer cites no legal authority for the proposition that the employee had to prove that the charges fell within the limitations established in the Act, as amended. It appears, however, that the matter is one of first impression. The Act does not specify who has the burden of proof on the issue of the excessiveness of medical charges; however, the Act does give employers the right to screen bills issued by authorized treating physicians to assure compliance with the limitations set out in the Act. See Ala.Code 1975, § 25-5-293(g). Given further that employers, through their workers’ compensation insurers and administrators, have greater access to the fee schedules and prevailing-rate information, see Steward Mach. Co. v. Board of Trs. of Univ. of Alabama, 36 So.3d 67, 70 (Ala.Civ.App.2009), it would be fair to place the burden of proving excessive charges on employers. See Ceres Marine Terminals v. Armstrong, 59 Va.App. 694, 722 S.E.2d 301 (2012); Washington Twp. Fire Dep’t v. Beltway Surgery Ctr., 911 N.E.2d 590, 596-97 (Ind.Ct.App.2009) (accord). Most pointedly, because the limitations are intended to, and do, benefit the employer, it would be consistent with general Alabama law to place the burden of proving their applicability on the employer as matter of avoidance of or reduction in liability. See Fik e v. Stratton, 174 Ala. 541, 557, 56 So. 929, 935 (1911) (where contractual provision benefited contractor, burden of proving that provision applied was placed on contractor). Thus, in my opinion, if the employer contended that the charges exceeded the maximum amounts recoverable under the Act, it bore the burden of proving that defense.[7] The employer has failed to prove that the trial court committed reversible error on this point.
Finally, the employer asserts that the trial court erred in its award of temporary-total-disability benefits to the employee. The record discloses that, on October 23, 2012, the employee filed a “motion for compensability hearing” in which the employee, among other things, informed the trial court that he had not received any temporary-total-disability benefits for his recovery period after his May 15, 2012, surgery. The employee requested that the trial court conduct a hearing to decide the compensability of his injury “and order such relief as [the employee] may be entitled under the Act.” The trial court granted that motion on November 1, 2012. In its final judgment, the trial court awarded the employee temporary-total-disability benefits “at the appropriate compensation rate subject to the maximum and minimums of § 25-5-68, [Ala.Code 1975,] for time he was off work under the care of treating physician Dr. Savage during recovery process.” Those findings imply that the trial court determined that the employee was temporarily totally disabled while healing from his surgery, which finding presumably was supported by the em *1038 ployee’s testimony at trial. See Parham, supra. However, the employer complains that the judgment leaves for its determination the weekly amount to be paid and the duration of the payments due. The employer contends, as it did in its post-judgment motion, that the trial court should have decided those issues when making its findings of fact and conclusions of law pursuant to Ala.Code 1975, § 25-5-88.
In its judgment, the trial court found that the employee was “off work under the Doctor’s care from on or about April 30, 2012, until his release by Dr. Savage on July 19, 2012.” That finding established that the recovery process lasted for 10 weeks and 4 days, or 10.57 weeks. The employee also conceded in his response to the postjudgment motion that the employer had established his average weekly earnings as being $280.02 through one of its exhibits. Section 25-5-57(a)(l), Ala. Code 1975, establishes that the compensation rate shall be 66% percent of the average weekly earnings, which, in this case, would be $153.35. Section 25-5-57(a)(l) further provides that the mínimums set out in § 25-5-68 apply when calculating the temporary-total-disability rate. Section 25-5-68(a) provides that the compensation rate shall not be less than 27½ percent of the state’s average weekly wage, which, on the date of the employee’s injury was $755.46, making the employee’s minimum weekly compensation rate $208.00.[8] Multiplying the compensation rate of $208 by 10.57 weeks produces an award of $2,198.56, an amount to which the employee agrees and which the employer does not contest. Thus, although the trial court did not, in its conclusions of law, express the amount of temporary-total-disability benefits awarded, the judgment contains findings and the record contains undisputed evidence from which this court can easily compute that award.
In the past, a majority of this court has determined that a judgment in a workers’ compensation case that fails to specify the dollar amount of compensation awarded is not sufficiently final for appellate review. See, e.g., Coosa Valley Health Care v. Johnson, 961 So.2d 903 (Ala.Civ.App.2007); Norment Sec. Grp. v. Chaney, 938 So.2d 424 (Ala.Civ.App.2006); Homes of Legend, Inc. v. O’Neal, 855 So.2d 536 (Ala.Civ.App. 2003); and International Paper Co. v. Dempsey, 844 So.2d 1236 (Ala.Civ.App. 2002). However, in Equity Group-Alabama Division v. Harris, 55 So.3d 299, 303 (Ala.Civ.App.2010), this court determined that a judgment is final when it awards temporary-total-disability benefits “at the compensation rate” without calculating the exact amount due. Because the judgment in this case contains similar language, and because this court can ascertain from the record the undisputed amount awarded, I believe that the judgment is final under Harris and is sufficient for the purposes of § 25-5-88.
Alternatively, the record does not contain any indication that, before or during the trial, the parties disputed the amount of temporary-total-disability benefits due or that the parties submitted that controversy to the trial court. The employee did make a general plea for an award of temporary-total-disability benefits in his “motion for compensability hearing”; however, both parties filed pretrial briefs, and neither mentioned any controversy regarding *1039 the amount or duration of the temporary-total-disability benefits due. Because we have no record of the trial proceedings, we have no indication that any controversy over the temporary-total-disability benefits had arisen and had been submitted to the trial court for resolution. In its post-judgment motion, the employer raised the issue to the trial court that it had failed to specify the dollar amount of the compensation awarded, but it did not assert a controversy as to that point, and the employee conceded the amount due in his response to the postjudgment motion. On appeal, the employer has not pointed to any part of the record showing that it litigated during the trial any issues regarding the amount of temporary-total-disability benefits due. In my special writing in SCI Alabama Funeral Services, Inc. v. Hester, 984 So.2d 1207, 1211-16 (Ala.Civ.App.2007) (Moore, J., concurring in the result), I argued that the failure of a trial court to ascertain the amount of compensation due does not violate Ala.Code 1975, § 25-5-88, or affect the finality of its judgment under Ala.Code 1975, § 25-5-81, when the parties did not submit any controversy over that matter to the trial court for determination. I maintain that position. See Ex parte Cowabunga, Inc., 67 So.3d 136, 144 (Ala.Civ.App.2011) (Moore, J., concurring in part and dissenting in part). Thus, I find no merit in the employer’s contention that the trial court erred in failing to more specifically award temporary-total-disability benefits.

. In the judgment, the trial court ordered the employer to pay the charges to the medical providers, but it reserved to the employer the right to contest the rates. Thus, the judgment actually benefits the employer by allowing it an opportunity to reduce the charges, if allowable, before payment, even though the employer did not prove the excessiveness of the charges at trial. Because that provision does not harm the substantial rights of the employer, its inclusion is harmless error. See Rule 45, Ala. R.App. P.

. See Memorandum Regarding "State’s Average Weekly Wage,” issued by Scottie Spates, Director, Workers’ Compensation Division of the Alabama Department of Labor (June 5, 2013). On the date this opinion was released, this memorandum could be found at http:// labor.dlabama.gov/docs/guides/wc-weeklywage. pdf; a copy of this memorandum is available in the case file of the clerk of the Alabama Court of Civil Appeals.